**UNITED STATES of America, Appellee,**

v.

**Carlo MAZZELLA, Appellant.**

**No. 84–1779.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1985.

Decided July 17, 1985.

Gene Harrelson, Texarkana, Ark., for appellant.

Steven N. Snyder, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Carlo Mazzella appeals from a final judgment entered in the District Court [1] for the Western District of Arkansas following a non-jury trial finding him guilty of attempt-

---

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and West-    ern Districts of Arkansas.

ing to manufacture methamphetamine in violation of 21 U.S.C. § 846. The district court sentenced appellant to a term of eighteen months imprisonment. For reversal appellant argues that the district court erred in (1) denying his motion to dismiss on the grounds of outrageous government conduct and (2) denying his motion to dismiss on the grounds that his conduct failed to constitute an attempt. For the reasons discussed below, we affirm the judgment of the district court.

The facts in this case are undisputed. In an attempt to identify and prosecute manufacturers of illicit drugs, the Drug Enforcement Administration (DEA) established Universal Solvents of America (Universal) as an undercover chemical and supply company. In order to entice business from individuals who were seeking to produce illicit drugs, the DEA placed an advertisement in several magazines oriented toward illicit drug usage. The advertisement consisted of a copy of Universal's business card.

Upon reading the advertisement, appellant wrote a letter to Universal requesting a catalogue. On August 28, 1982, appellant telephoned Universal inquiring about the status of his request. A DEA agent, posing as a Universal employee, informed appellant that catalogues would be unavailable for a couple of weeks and suggested that appellant mail Universal a list of items for a price quote. On August 30, appellant mailed a letter requesting price quotes on various items, including phenyl 2-propanone, a Schedule II controlled substance. 21 U.S.C. § 812. On September 14, appellant telephoned Universal inquiring about his letter requesting price information. On September 17, DEA agent Mel Schabilion, posing as Universal employee Mel Sanders, wrote appellant that phenyl 2-propanone was a controlled substance and therefore not available from Universal but that Universal could "supply all chemicals and equipment necessary to produce [phenyl 2-propanone] without restriction" and suggested that appellant purchase "our very popular kit for $700 which includes all chemicals, equipment and glass-

ware necessary" to manufacture phenyl 2-propanone. The letter additionally stated that "a qualified chemist [is] available to answer questions." On October 19, appellant telephoned Universal and spoke with DEA agent Schabilion. Appellant stated that he wanted to place an order for some "stuff" and that he needed it quickly. DEA agent Schabilion took appellant's order for the "kit" described in the September 17 letter and various other chemicals.

On October 21, Universal shipped appellant's order to the DEA's regional office in Little Rock, Arkansas. On October 26, DEA agent James Stepp, posing as a United Parcel Service (UPS) driver, telephoned appellant to arrange a C.O.D. delivery of five packages containing appellant's order, costing $1,023. Because he only had $850 in cash and did not want to write a check, appellant stated that he would pick up the packages at the UPS storage unit the following morning. DEA agent Stepp responded that he did not want to take the packages back and would be willing to accept the $850 as a partial payment with the balance due at a later date.

At approximately 4:30 p.m. that same day, DEA agent Stepp, disguised as a UPS driver, delivered the packages to the address appellant had previously given to DEA agent Schabilion. Appellant apparently resided at this address. Appellant paid DEA agent Stepp $850 in cash and signed a receipt. Immediately after the delivery, appellant drove away with the chemicals and hid them under a tarpaulin on the side of a dirt road. At approximately 5:30 p.m., appellant returned to his home where DEA agents awaited his arrival. The DEA agents advised appellant of his constitutional rights and placed him under arrest for attempting to manufacture methamphetamine. After unsuccessfully trying to secure legal representation, appellant told the DEA agents that he wanted to cooperate with them.

With appellant's help, the DEA agents recovered the five boxes appellant had hidden. Some of the boxes had been opened,

but all of the containers inside the boxes remained sealed. Appellant then directed the DEA agents to his home where he kept a book entitled "Speed." This book describes how to manufacture methamphetamine. After the physical evidence had been retrieved, appellant, in response to a DEA agent's request, wrote and signed a statement reciting his version of how the events transpired in connection with his arrest. Appellant admitted in the statement that his "intentions [were] to attempt to make speed from the aforementioned chemicals."

At trial defense counsel argued that appellant had been entrapped and also that his actions did not amount to an attempt because he had not taken a "substantial step" toward the commission of the crime. The district court rejected appellant's arguments, specifically finding that appellant was predisposed to commit the crime charged and that he had taken a "substantial step" toward manufacturing an illicit drug.

Appellant makes two arguments on appeal. First, appellant argues that the conduct of the DEA agents was so outrageous as to violate the principles of fundamental fairness embodied in the due process clause of the fifth amendment. Second, appellant argues that the evidence presented was insufficient to establish that appellant's conduct constituted a "substantial step" toward the commission of the crime of attempting to manufacture methamphetamine.

Appellant does not argue that the district court erred in rejecting his entrapment defense.[2] Rather, he asserts a distinctly separate but related due process defense. "Recent cases have recognized ... that apart from any question of predisposition of a defendant to commit the offense in question, governmental participation may be so outrageous or fundamentally unfair as to deprive the defendant of due process of law or move the courts in the exercise of their supervisory jurisdiction of criminal justice" to bar the conviction. *United States v. Quinn*, 543 F.2d 640, 648 (8th Cir.1976).

The outrageous conduct defense has its origins in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In that case an undercover narcotics agent approached the defendant and offered to give him a chemical essential to the manufacture of methamphetamine in return for one half of the methamphetamine the defendant produced. The defendant went along with this "scheme" and was subsequently prosecuted for manufacturing and distributing the illegal drug. After receiving a standard entrapment instruction, the jury found the defendant guilty on all counts. On appeal the defendant argued that the facts showed entrap-

---

**2.** The Supreme Court first recognized and applied the entrapment defense in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Chief Justice Hughes speaking for the Court held that the focus of analysis of the entrapment defense must be on the defendant's intention or predisposition to commit the crime. *Id.* at 451, 53 S.Ct. at 216. The majority of subsequent decisions continue to apply this standard. *See, e.g., Hampton v. United States*, 425 U.S. 484, 492, 96 S.Ct. 1646, 1651, 48 L.Ed.2d 113 (1976) (Powell, J., concurring); *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973); *United States v. Webster*, 649 F.2d 346, 348 (5th Cir. 1981).

Some federal courts have adopted the position taken by Justice Roberts' concurrence in *Sorrells* that analysis of an entrapment defense should 'objectively focus on the degree of government involvement in the crime. 287 U.S.

at 459, 53 S.Ct. at 219. *See Greene v. United States*, 454 F.2d 783, 786–87 (9th Cir.1971); *Smith v. United States*, 118 U.S.App.D.C. 38, 44, 46, 331 F.2d 784, 790, 792 (1964) (banc). The objective approach is favored by a majority of commentators, *see* National Commission on Reform of Federal Laws, A Proposed New Federal Criminal Code § 702(2) (1971); Model Penal Code § 2.13 (Proposed Official Draft, 1962); *see also* Dix, *Undercover Investigating and Police Rulemaking*, 53 Tex.L.Rev. 203, 246–48 (1975); Mikell, *The Doctrine of Entrapment in the Federal Courts*, 90 U.Pa.L.Rev. 245, 250–52 (1942); Note, *Entrapment:* Sorrells *to* Russell, 49 Notre Dame Law. 579 (1974); however, it has never been adopted by a majority on the Supreme Court. *See Hampton v. United States*, 425 U.S. at 488–89, 96 S.Ct. at 1649–50; *United States v. Russell*, 411 U.S. at 433–36, 93 S.Ct. at 1643–45; *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958).

ment as a matter of law. The Ninth Circuit agreed and held that as a matter of law "a defense to a criminal charge may be founded upon an intolerable degree of government participation in the criminal enterprise." 459 F.2d 671, 673 (1972). The Supreme Court, however, reversed, concluding that the government had merely afforded the defendant an opportunity to commit the offense. 411 U.S. at 435–36, 93 S.Ct. at 1644–45. The majority, however, recognized that a defense based on the government's overinvolvement in the criminal enterprise would be available where "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." Id. at 431–32, 93 S.Ct. at 1642–43. The majority found that the government agent's conduct in Russell was not so outrageous.

The only other Supreme Court case considering the outrageous conduct defense was Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). In that case the defendant was convicted of distributing heroin which had been supplied by a government informant and sold to an undercover agent. The plurality opinion, written by Justice Rehnquist, stated that the remedy of the criminal defendant with respect to the acts of government agents lies solely in the defense of entrapment, and a defendant's predisposition to commit the crime should operate as a bar to that defense. Id. at 490, 96 S.Ct. at 1650. Justice Powell, joined by Justice Blackmun, concurred in the result but was "unwilling to join the plurality in concluding that, no matter what the circumstances, neither due process principles nor our supervisory power could support a bar to conviction in any case where the government is able to prove predisposition." Id. at 495, 96 S.Ct. at 1652. Justice Powell emphasized that cases where the due process defense will be successful are rare. "Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." Id. at 495 n. 7, 96 S.Ct. at 1653 n. 7.[3]

The Supreme Court's analysis in Russell and Hampton has left unclear the types of government conduct considered to be outrageous. The majority of lower court decisions apply a totality of the circumstances approach to assess the fairness of the government's involvement in crime-related activity. See United States v. Tobias, 662 F.2d 381 (5th Cir.1981), cert. denied, 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982); United States v. Leja, 563 F.2d 244 (6th Cir.1977), cert. denied, 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); United ed States v. Twigg, 588 F.2d 373 (3d Cir. 1978). A thorough survey of these cases indicates that courts have rarely characterized the government's conduct as outrageous.[4]

■ Appellant contends that the involvement of the DEA in placing the advertisement, sending the catalogue, providing assistance and technical knowledge, suggesting the popular "kit," and personally delivering the kit to his home constitutes conduct so outrageous as to violate the due process clause of the fifth amendment. "Although a totality of the circumstances standard must be applied, it is beneficial to review the parts that make up the whole." United States v. Tobias, 662 F.2d at 387.

The DEA's placement of the advertisement in a magazine can in no way be

3. The dissent argued that analysis of the entrapment defense should focus on the extent of the government agent's involvement in the crime. Hampton v. United States, 425 U.S. at 497, 96 S.Ct. at 1653. The dissenting justices also agreed with Justice Powell that due process principles or the Court's supervisory powers would act to bar conviction, even though the defendant might have been predisposed, where the conduct of the law enforcement authorities is sufficiently offensive. Id. The dissent concluded that the government agents' conduct in Hampton was sufficiently offensive to bar conviction. Id.

4. For a compilation of drug-related cases where defendants unsuccessfully argued outrageous government conduct, see United States v. Tobias, 662 F.2d 381, 392 n. 2 (5th Cir.1981), cert. denied, 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982).

considered to violate the principles of fundamental fairness embodied in the due process clause because the advertisement was neutral in character and pertained to a legal enterprise. The DEA suggested that appellant send Universal a list of chemicals for a price quote. Appellant responded of his own volition and asked for a price quote on several chemicals used in the manufacture of methamphetamine, including phenyl 2-propanone, a controlled substance. The DEA sent appellant a letter stating that phenyl 2-propanone was a controlled substance and could not be sold. The letter then informed appellant that a "kit" was available to make phenyl 2-propanone. Contrary to appellant's statement contained in his brief that "the DEA agents 'suggested' that he order the 'kit' which contained the necessary ingredients and apparatus with which to manufacture *methamphetamine,*" (emphasis added), phenyl 2-propanone (methyl benzyl ketone) is not methamphetamine. We do not believe that the DEA agents acted "outrageously" in offering to sell appellant a "kit" to manufacture a chemical which appellant had previously requested in his letter of August 30, 1982. Appellant responded to the DEA's letter of his own volition and placed an order for the kit and several other chemicals, including methylamine, hydrochloric acid, aluminum turnings, and hydrobromic acid. The DEA became alerted to appellant's plan not because he ordered the "kit" but because he ordered the kit in conjunction with these other chemicals which, when properly combined, produce methamphetamine.

The DEA never told appellant what chemicals were needed to manufacture methamphetamine; appellant got the "recipe" from a book entitled "Speed." The DEA offered assistance to appellant, but none was ever given. The last stage of the DEA's involvement came when a DEA agent, disguised as a UPS employee, delivered the order to the address appellant had previously given to another DEA agent. Appellant took delivery of the chemicals by signing a receipt and paying $850. It can hardly be said that delivering the chemicals pursuant to appellant's request is outrageous conduct or unfair. As the Fifth Circuit said in *United States v. Tobias,* 662 F.2d at 387, "[b]ut here, the drug transaction would have stopped at any time that [the defendant] made no further calls." In the present case, appellant could have ended his participation in the "scheme" at any time up to and including the delivery of the chemicals. Considering the government's conduct as a whole, we cannot say that it was so outrageous as to violate the due process clause of the fifth amendment.

■ Appellant next argues that the evidence was insufficient to establish that his conduct constituted an attempt to manufacture methamphetamine. Appellant contends that his ordering, receiving, and possessing the precursor chemicals and equipment was "mere preparation." While admitting that he intended[5] to manufacture methamphetamine, appellant denies that his conduct constituted a "substantial step" toward the commission of the crime. We do not agree.

Appellant was charged with and convicted of attempting to manufacture methamphetamine in violation of 21 U.S.C. § 846.

[T]he requisite elements of attempt are (1) an intent to engage in criminal conduct, and (2) conduct constituting a "substantial step" towards the commission of the substantive offense which strongly corroborates the actor's criminal intent.... [W]hether conduct represents a "substantial step" toward the commission of the criminal design is ... "a question of degree," necessarily depend-

---

5. As the Tenth Circuit stated in *United States v. Monholland,* 607 F.2d 1311, 1318 (10th Cir. 1979),

mere intention to commit a specified crime does not amount to an attempt. It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime.

ing on the factual circumstances peculiar to each case.

*United States v. Joyce,* 693 F.2d 838, 841 (8th Cir.1982).

A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.... In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.

*United States v. Manley,* 632 F.2d 978, 987–88 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Even having these formulations as guideposts, the determination whether a defendant's conduct amounts to a "substantial step" is necessarily dependent on the particular factual circumstances in the case at hand. Appellant's conduct consisted of ordering, receiving and possessing the chemicals and equipment necessary to manufacture methamphetamine. Appellant argues that because the chemical containers remained unopened and were in his possession for less than one hour, his conduct never amounted to a substantial step. However, in contrast to possessory offenses, "physical participatory crimes [such as manufacturing] ... [require] a defendant ... [to] engage in numerous preliminary steps which brand the enterprise as criminal and are incompatible with innocent purposes." *United States v. Rivera-Sola,* 713 F.2d 866, 870 (1st Cir.1983); *see also* Model Penal Code § 5.01(2)(e), (f) (Proposed Official Draft 1962). Appellant's ordering and possession of the specific combination of chemicals required to manufacture methamphetamine can hardly be said to be an innocent coincidence; rather the ordering and possession of the particular combination of chemicals "brand the enterprise as criminal and [is] incompatible with innocent purposes." 713 F.2d at 870. Appel-

lant does not suggest that he ordered these chemicals for a purpose other than to manufacture methamphetamine; on the contrary, appellant admits his illicit design for the chemicals. Additionally, the appellant possessed a book entitled "Speed" which described the manufacturing process for the illicit drug. A government chemist testified that although it would be difficult for someone without prior training in chemistry to manufacture methamphetamine with the aid of the book, it would not be impossible.

After carefully considering appellant's conduct and the surrounding circumstances, we conclude there was sufficient evidence to warrant a finding that appellant's conduct constituted a "substantial step" toward the manufacture of methamphetamine. We note, however, that appellant's intent to manufacture methamphetamine was clearly evidenced by his signed statement and corroborated by the fact that he ordered and possessed all of the necessary chemicals which, when properly combined, produce methamphetamine.

Accordingly, the judgment of the district court is affirmed.