UNITED STATES of America, Appellee,

v.

Herbert R. MONTANYE, also known as Muscles, Appellant.

No. 91–1703.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1992.

Decided June 8, 1993.

Daryl J. Douglas, Kansas City, MO, argued (David M. Peterson, on the brief), for appellant.

Charles E. Ambrose, Asst. U.S. Atty., Kansas City, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges, En Banc.

FAGG, Circuit Judge.

Herbert R. Montanye joined an ongoing conspiracy to manufacture methamphetamine by agreeing to supply laboratory glassware to others knowing they would use it to manufacture the drug. A month after Montanye delivered the glassware to his coconspirators, federal agents found the coconspirators' methamphetamine laboratory with enough chemicals on hand to make 37.5 kilograms of methamphetamine. At trial, a jury convicted Montanye of conspiracy to manufacture methamphetamine and attempt to manufacture methamphetamine. The district court sentenced Montanye to two concurrent thirty-year prison terms.

Montanye appealed, raising several issues separately and collectively with his coconspirators. A panel of this court rejected most of Montanye's arguments, but reversed Monta-nye's attempt conviction concluding his glassware delivery was insufficient to show he attempted to manufacture methamphetamine. *United States v. Montanye,* 962 F.2d 1332, 1346, 1348 (8th Cir.1992), *reh'g granted and op. vacated,* 962 F.2d at 1349 (July 30, 1992 Order). Although Montanye did not appeal his sentence, the panel also remanded Montanye's case for resentencing after concluding it was a gross miscarriage of justice to hold Montanye responsible for the 37.5 kilograms of methamphetamine producible from the chemicals on hand when the laboratory was discovered. *Id.* at 1347. We granted rehearing en banc to reconsider these questions, thus vacating the panel's opinion. *Id.* at 1349. In seeking en banc review, the Government contends sufficient evidence supported Montanye's attempt conviction and we should not correct Montanye's sentence under the plain error standard. In his supplemental en banc brief, Montanye asserts there was insufficient evidence to support his attempt conviction and the district court committed plain error in using the 37.5 kilograms of methamphetamine to calculate his base offense level.

██ To establish Montanye attempted to manufacture methamphetamine, the Government had to show Montanye's (1) criminal intent, and (2) conduct constituting a substantial step towards the crime's commission. *See United States v. Wagner,* 884 F.2d 1090, 1095 (8th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *United States v. Mazzella,* 768 F.2d 235, 239–40 (8th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Montanye contends the mere delivery of glassware for the establishment of a methamphetamine laboratory does not represent a substantial step towards manufacturing methamphetamine. Whether a defendant's conduct amounts to a substantial step necessarily depends on the facts of each case. *Wagner,* 884 F.2d at 1096. Although panels of this court have held ordering, receiving, and possessing the equipment and chemicals necessary to manufacture methamphetamine was a substantial step, *see id.* at 1096–97; *United States v. Felix,* 867 F.2d 1068, 1071–72 (8th Cir.1989); *Mazzella,* 768 F.2d at 239–40,

whether Montanye's mere delivery of glassware is a substantial step towards manufacturing methamphetamine has evenly divided the en banc court. Thus, Montanye's jury conviction for attempt to manufacture methamphetamine is affirmed by the equally divided vote of the court en banc.

We now turn to Montanye's assertion that the district court improperly based his offense level on the 37.5 kilograms of methamphetamine producible from the leftover chemicals found at his coconspirators' laboratory.

Before Montanye was sentenced, he disputed the production capacity of his coconspirators' laboratory. In his written objections to the presentence report (PSR), Montanye objected that "the amount of methamphetamine reported [in] the [PSR] is inaccurate." Montanye contended that instead of 37.5 kilograms producible from the unused chemicals using one production method, "the lab[oratory was] capable of producing closer to 12 kilograms of methamphetamine" using the different production method in place when the laboratory was seized. At the sentencing hearing, Montanye's counsel told the district court that the objection accurately identified Montanye's challenge to the PSR, and stated that "whatever [the method in use at the laboratory] could have produced [was] the amount of methamphetamine [Montanye] · should be charged with." In short, Montanye argued that he should be charged with 12 rather than 37.5 kilograms of methamphetamine. After the Government presented evidence to show the laboratory's production capacity, the district court found 37.5 kilograms could be produced. Having made this finding, the district court adopted the PSR's statement that the production capacity was reasonably foreseeable to Montanye. Montanye did not object to the PSR's foreseeability statement in the district court.

On appeal, Montanye acknowledges that the district court can estimate drug quantity based on a laboratory's production capability and that the chemicals found at the laboratory could produce 37.5 kilograms of methamphetamine, but asserts the district court erroneously failed to make findings explaining its foreseeability decision before attributing the laboratory's entire production capacity to him.

 Because Montanye forfeited the foreseeability issue by failing to raise it in the district court, we lack authority to consider the question unless (1) the district court committed an error, i.e., deviated from a legal rule, (2) the error is plain, i.e., clear under current law, and (3) the error affected Montanye's substantial rights. Fed. R.Crim.P. 52(b); *United States v. Olano,* —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). When a forfeited error meets these limitations, we have discretionary authority to order correction. *Olano,* —— U.S. at ——, ——, 113 S.Ct. at 1776, 1778. We should exercise our remedial discretion "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.,* at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

 We agree with Montanye that, because "the scope of jointly-undertaken criminal activity ... is not necessarily the same for every participant" in a conspiracy, a conspiracy defendant is only accountable for drug quantities implicated in the conspiracy that are reasonably foreseeable to the defendant. U.S.S.G. § 1B1.3 n. 1 (Nov. 1990). Thus, when a conspiracy defendant objects that the quantity of drugs attributed to the defendant in the PSR are not reasonably foreseeable to the defendant, the district court must make a foreseeability finding about the objecting defendant. *See United States v. Rogers,* 982 F.2d 1241, 1245–46 (8th Cir.1993); *United States v. Coleman,* 990 F.2d 419, 421 (8th Cir.1993). In keeping with this requirement, we have remanded for resentencing when the district court failed to make findings explaining its foreseeability decision. *E.g., Rogers,* 982 F.2d at 1245–46. Nevertheless, when a conspiracy defendant does not make an objection disputing the factual issue of foreseeability, the district court is not required to make foreseeability findings. *United States v. Edwards,* 994 F.2d 417 (8th Cir.1993); *see United States v. Streeter,* 907 F.2d 781, 792 (8th Cir.1990). Instead, the district court may simply rely on

the PSR. *Streeter,* 907 F.2d at 792; *see United States v. Candie,* 974 F.2d 61, 65 (8th Cir.1992); *United States v. Holt,* 969 F.2d 685, 688 (8th Cir.1992). Here, Montanye did not object to the PSR's foreseeability statement and thus, as our cases permit, the district court relied on the PSR.

■ To bolster his plain error argument, Montanye also asserts the record does not support a foreseeability finding because "the government produced no reliable evidence that [he] could have reasonably foreseen the laboratory would produce 37.5 kilograms of methamphetamine, much less a preponderance." This contention does not help Montanye. Like the district court's obligation to make a finding, the Government's obligation to present evidence in support of a PSR's factual statements only arises for the facts the defendant disputes. *Streeter,* 907 F.2d at 792; *see Edwards,* 994 F.2d at 417; *United States v. Mahler,* 984 F.2d 899, 905–06 (8th Cir.1993). Because the district court did not violate our current cases in imposing Montanye's sentence, the first two limitations on our appellate authority under Rule 52(b) are not overcome.

■ Even assuming the district court committed an error that was plain, to satisfy Rule 52(b)'s third limitation, Montanye must show the forfeited error was prejudicial. *Olano,* —— U.S. at —— – ——, 113 S.Ct. at 1777–78. As Judge Gibson's concurrence clearly explains, *infra* at 194; *see supra* at 192, Montanye's sentence would be the same even if Montanye obtained the desired reduction in drug quantity from 37.5 to 12 kilograms of methamphetamine. That being the case, Montanye cannot show the alleged error "affected the outcome of the [d]istrict [c]ourt proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1778. We differ with the concurrence's suggestion that the lack of prejudice to Montanye because his sentence would be the same means the district court did not deviate from a legal rule. Deviation from a legal rule and lack of prejudice are separate limitations on our appellate authority under Rule 52(b). *Id.* at —— – ——, 113 S.Ct. at 1777–78. Here, the asserted deviation is the district court's failure to make a foreseeability finding. The fact that Montanye's sentence would be the same, even if the district court had found production of only 12 kilograms was foreseeable to Montanye, has no bearing on the initial question whether our cases require the district court to make an express foreseeability finding. Because our cases do not require the district court to make an express foreseeability finding when the defendant does not raise the issue at sentencing, the district court did not deviate from a legal rule in this case. To say there was no deviation from a legal rule in the first place because Montanye's sentence would remain the same, however, blurs the distinction between Rule 52(b)'s first and third limitations.

■ Montanye also contends the district court's failure to make a foreseeability finding seriously affects the fairness, integrity, and public reputation of judicial proceedings. *See id.,* at ——, 113 S.Ct. at 1779 (standard for Courts of Appeals to exercise remedial discretion). Because Rule 52(b)'s three limitations are not satisfied, we lack authority to exercise our discretion under the Rule. *Id.,* at ——, ——, 113 S.Ct. at 1776, 1778. Even if Rule 52(b)'s limitations were met, we would not exercise our remedial discretion in this case. Montanye knew he was aiding a conspiracy to manufacture methamphetamine, 962 F.2d at 1343, 1347, and the record shows Montanye knew his coconspirators were already making methamphetamine when he joined the conspiracy. In addition, Montanye had ample opportunity to object to the PSR's foreseeability statement before he was sentenced but failed to do so. Although we do not know why Montanye challenged the quantity of producible methamphetamine but not its foreseeability to him, we should not invoke Rule 52(b) to allow Montanye to follow one fact-based guidelines strategy in the district court and, having lost on that line of attack, raise on appeal as plain error another factual application of the guidelines that he did not put in issue before sentencing despite opportunities to do so. There is nothing seriously unfair about leaving Montanye with his sentence based in part on facts he did not dispute in the district court.

No useful purpose would be served by an extended discussion of Montanye's remaining contentions. The panel correctly rejected them. 962 F.2d at 1339–46.

Accordingly, we affirm.

JOHN R. GIBSON, Circuit Judge, concurring specially.

I agree that we should affirm Montanye's sentence but concur specially using somewhat different reasoning than that employed by the majority opinion.

Montanye's counsel filed written objections to the presentence report. Montanye objected to the report's statement that the lab had a production capacity of 37.5 kilograms, arguing that the testimony at trial showed the lab was capable of producing only about 12 kilograms.

At the commencement of sentencing proceedings, the district judge read Montanye's several objections into the record, and then asked Montanye's counsel if those objections accurately identified his reservations or challenges to the presentence report. Montanye's counsel stated that he based his objection to the production capacity on the fact that the report assumed that there would be a future conversion to another manufacturing process that would increase the lab's production capacity, but that when the laboratory was seized the palludium method was being utilized, and that this method could not make 37.5 kilograms.

The district court proceedings then revolved around the lab's production capacity based on these differing methodologies. At the conclusion, the district court did not base its quantity determination on any production method that might be used in the future. Instead, the court stated that if the laboratory equipment was used only five times it would produce 40 kilograms, and that this was a "conservative method of determining capability of production and reasonable expectations of what would be done to carry out the conspiracy." (S.Tr. at 41).

Thus, the district court decided whether the conspirators would use the lab to produce 12 kilograms as contended by Montanye, or 37.5 kilograms as contended by the government. The district court pointed out during the sentencing proceedings that even if it accepted Montanye's calculation of capacity and reduced his offense level by two points, the sentence would be the same. In the written findings of fact attached to the judgment, the judge reiterated the statement that even if he accepted defendant's calculation of capacity and reduced his offense level by two points, a 360–month minimum sentence would still be prescribed.

The 12 kilogram capacity calls for a base offense level of 36. U.S.S.G. § 2D1.1(c)(4) (Nov. 1991). A 37.5 kilogram capacity calls for a base offense level of 38. *Id.* There is no controversy about the district court's addition of two offense levels for escape. Thus, under defendant's theory in the district court, the total offense level would be 38, and under the government's theory, 40. The guideline table reveals considerable difference between these two offense levels when the criminal history category is modest. Montanye, however, had twelve points in his criminal history, about which there is no dispute. This results in a criminal history category of V, and with this category both offense levels 38 and 40 call for a sentence range of 360 months to life. The sentence imposed of 360 months was the minimum sentence for either offense level.

"The first limitation on appellate authority under Rule 52(b) is that there indeed be 'error,' " or "[d]eviation from a legal rule." *United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). Montanye has no claim that the district court erred, as the same sentence was required even accepting Montanye's position at trial. When the parties briefed and argued this case before the panel, Montanye raised no issue as to his sentencing, and the panel raised this issue for the first time. Montanye argues the propriety of his sentence in the supplemental brief before the court en banc, but I do not read the brief to depart from his position in the district court. Certainly Montanye cannot take a position before this court en banc that he did not take before the district court. *See United States v. Ragan*, 952 F.2d 1049 (8th Cir.1992) (per curiam). Indeed, as there is no error or

deviation from a legal rule, this is the end of the inquiry under *Olano*, —— U.S. at ——, 113 .S.Ct. at 1777. Even if we assume error, there would be no plain error, as the same sentence would have been called for by Montanye's position at sentencing. *See Id.*, —— U.S. at ——, 113 S.Ct. at 1778 (in order for plain error to occur, error "must have affected the outcome of the District Court proceedings").

I would affirm the sentence.

BRIGHT, Senior Circuit Judge, joined by McMILLIAN and· MORRIS SHEPPARD ARNOLD, Circuit Judges, dissenting.·

I dissent from the en banc court's affirmance of Montanye's attempt conviction and his sentence predicated on the foreseeability of his co-conspirator's production of 37.5 kilograms of methamphetamine.

## I.

I shall not discuss extensively my disagreement with the en banc court's affirmance of the conviction for attempt to manufacture methamphetamine. First, the conviction was affirmed by an evenly divided vote which carries no precedential value. Second, the affirmance of the attempt conviction does not affect Montanye's sentence, which is concurrent with the conspiracy sentence. Nevertheless, I adhere to my position that Montanye's mere delivery of glassware is not a substantial step toward the manufacture of methamphetamine.[1]

## II.

The panel opinion vacated by the en banc court termed plain error the failure of the district court to make any determination of the amount of methamphetamine that would be foreseeable to Montanye by his delivery of the glassware. On the foreseeability issue the panel said:

> Montanye agreed to deliver glassware to Bruton from Utah. Evidence indicates that Montanye knew with certainty that he was aiding an illegal conspiracy. However, Montanye did not know how much or how little methamphetamine his co-conspirators would produce. Montanye never participated in the process of manufacturing or distributing the methamphetamine. The district court possessed insufficient evidence to find Montanye responsible for all of the methamphetamine produced.

*United States v. Montanye*, 962 F.2d 1332, 1347 (8th Cir.), *reh'g granted and op. vacated*, 962 F.2d 1349, *cert. denied*, —— U.S. ——, ——, 113 S.Ct. 418, 496, 121 L.Ed.2d 341, 434 (1992). Although the foreseeability issue was not raised on appeal before the panel, it has now been briefed and argued before the en banc court.

Montanye's counsel, however, did not specifically raise the foreseeability issue in the district court. The majority has determined no plain error exists and refuses review of that issue. It seems to me that gross injustice exists and that we should now reach that issue and remand the case to the district court to consider modifying the sentence because the record before us does not show that Montanye knew the quantity of methamphetamine to be produced by his co-conspirators. As the panel opinion said:

> We hold that [Montanye's] thirty-year sentence for a simple delivery of glassware constitutes a gross miscarriage of justice. We remand Montanye's case for resentencing and suggest that resentencing be im-

---

1. The Government's oral argument conceded some weakness in its case on attempt:

 [One problem with this case] was this attempt issue, because even though I do believe that it is technically correct in that it is a step that is more than one in preparation, it's one of those stereotypical hard cases that might tend to make bad law. I respectfully suggest that the panel opinion below did that by generalizing from several specific factual scenarios and trying to create a bright line....
 ....

 Had it not been for that language in the opinion, we probably would not have sought en banc review on that issue. I didn't really see the utility of that charge. I thought it was an overcharge, to tell you the truth, in an attempt to simply have some substantive offense for Mr. Montanye to support the conspiracy. But I do agree with Judge Arnold that that act far and away supported the conspiracy more than it supported an attempt charge.
 ....

 Abstract from tape recording of October 15, 1992 en banc oral argument.

posed consistent with the rationale of the Seventh Circuit in *Edwards* [*United States v. Edwards*, 945 F.2d 1387 (7th Cir.1991) ], and of this court in *North* [*United States v. North*, 900 F.2d 131 (8th Cir.1990) ].

*Montanye*, 962 F.2d at 1347.

The gross unfairness is apparent. As Montanye said during the sentencing hearing:

I don't think the act of transporting glassware is worthy of 30 plus years in prison, personally, based on the supposition on the account of what could or could not be made in the laboratory concerning the methamphetamine.

Sent. Tr. at 9–10.

This court should consider this issue now rather than later. Certainly, the opinions of this court indicate that a post-conviction remedy to review the sentence is appropriate, challenging the competency of Montanye's counsel in failing to raise before the trial court the obvious issue of the foreseeability of his co-conspirators' conduct.