_____

No. 95-1874
_____

United States,                         *
                                       *
          Appellant,                   *
                                       *
     v.                                *    Appeal from the United States
                                       *    District Court for the
John Charles Flaherty,                 *    District of Minnesota
                                       *
          Appellee.                    *
                      _____

          Submitted:   November 16, 1995

              Filed:   February 27, 1996
                      _____

Before HANSEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.
                      _____

MURPHY, Circuit Judge.


     John Charles Flaherty appeals his conviction on two counts of
aiding and abetting arson for which he received concurrent 37 month
sentences and three years supervised release.  On appeal he argues
that the district court[1] erred by admitting a nontestifying
codefendant's statements in violation of <u>Bruton v. United States</u>,
391 U.S. 123 (1968), denying his motion for severance, and
excluding evidence tending to show that a third party might have
set the fires.  He also claims that the evidence was insufficient
to support the jury's verdict.  We affirm.


     Eddy's Hamburger and Malt Shop in Long Lake, which was owned

_____

     [1]The Honorable Richard H. Kyle, United States District Judge
for the District of Minnesota.

and operated by Flaherty, was destroyed by two deliberately set fires that occurred approximately two weeks apart. On December 31, 1988, the fire department responded to put out a fire at the restaurant. An investigation found multiple points of origin, evidence of a liquid accelerant, and the remains of "trailers" consisting of commercial restroom roller towels that had been carefully draped from one fire location to the other. There was no evidence of forced entry, and all doors had been locked. The fire marshal investigator concluded that the fire had been set intentionally. On January 12, 1989 a second fire broke out at the restaurant. That investigation uncovered evidence that flammable liquids had been poured throughout the restaurant. There was no sign of forced entry. The fire marshal determined that this fire had also been deliberately set.

After an extensive investigation, Flaherty and Gregory Lee Melina were indicted by a grand jury and each charged with two counts of aiding and abetting arson, in violation of 18 U.S.C. §§ 844(i) and 2, and one count of conspiracy to commit arson, in violation of § 18 U.S.C. § 844(i). Both pleaded not guilty and went to trial before a jury. Flaherty was convicted for both fires, but Melina was convicted only of involvement in the second, and his appeal is proceeding separately.

The evidence at trial suggested that Flaherty was in severe financial trouble and set the fires to collect insurance proceeds, which he promised to share with Melina. Flaherty had incurred significant business and personal debts. The restaurant, which was his only source of income, was not generating a cash flow sufficient to cover expenses. He had not paid the taxes withheld from his employees' wages, and he owed the state significant amounts for unemployment compensation. In addition, his second business venture, the development of a teen nightclub across the street from Eddy's, had failed. In the weeks prior to the first fire, Flaherty learned that significant expenses would have to be

2

paid before the building could open and that the city council had denied his permit applications.

The evidence also suggested that Flaherty had an opportunity to set or aid in setting the fires. He closed the restaurant early on the day of the first fire. He entertained guests at his home in the evening, but there was evidence to show that he left his guests for nearly two hours shortly before the fire was discovered. The night of the second fire Flaherty had an alibi; he was in bed recovering from hernia repair surgery that he had undergone that afternoon. The timing of the surgery was shown to be suspicious, however. Flaherty had told others that his doctor told him to have the operation on that day. The doctor testified at trial that he had told Flaherty the surgery could be scheduled at will and that Flaherty had called on January 10 to schedule the surgery for two days later, the day of the fire.

There was physical evidence to link Flaherty to the fire scene. Analysis of the toweling material used as a trailer in the first fire revealed that it had been soaked with a medium petroleum distillate similar to mineral spirits. Mineral spirits and burned scraps of similar toweling were found inside a locked area of the building that had been leased for the teen nightclub. Only Flaherty and Tom Gestach, his business partner in the nightclub, had keys. The police also recovered a half-roll of similar toweling from the nightclub. After the second fire, Flaherty decided to give up on the nightclub venture. When he and Gestach were removing contents from the building, they uncovered a pile of toweling that had been ripped into strips similar to the trailers. Flaherty attempted to conceal the existence of these toweling strips. He placed them in a bag and convinced Gestach to carry it to a dumpster at a nearby Burger King. He told Gestach that he was being framed.

The jury also heard evidence that suggested Flaherty may have

3

attempted to divert suspicion away from himself by falsely reporting burglaries and mysterious threats over a period of time before the fires were set. He reported a string of burglaries at the restaurant, but police became suspicious because there was no sign of forced entry and no damage done. He also reported receiving a threatening phone call about his involvement in the teen night club, but police later found several scripts for the call on the nightclub premises and a diary entry by Flaherty identifying the call as a "phony harassment call."

There was also evidence linking Flaherty with Melina. The parties stipulated that the two knew each other, having met in the late 1970's or early 1980's. Liz Sorenson, Flaherty's friend and an employee at Eddy's, testified that Flaherty had used her telephone several times to contact someone named Greg and that she had received telephone calls for Flaherty from someone who identified himself as Greg. She also testified that during the time between the fires she had accompanied Flaherty when he was looking for someone matching Melina's description. In addition, a chalkboard found in Melina's basement had traces of an accurate drawing of Eddy's.

On appeal Flaherty argues that his Sixth Amendment right to confrontation was violated by the admission of certain out-of-court statements made by Melina, who did not testify and thus was not available for cross examination. Flaherty claims that the statements incriminated him in violation of Bruton v. United States, 391 U.S. 123 (1968).

Three separate statements were involved. First, statements made by Melina at a deposition in a related civil case were admitted into evidence. They concerned his contacts with Flaherty. Hal Shillingstad, the attorney who took the deposition, testified that Melina had told him "I ain't seen Johnny since 1980, and I've seen him one time back maybe in '84. That was the last time I seen

4

him," and "when I knew him, he drove a white, I think it was a Cadillac, white Cadillac or something . . .. " (T. 918-20). Flaherty argues that this is incriminating if combined with the testimony of Flaherty's wife that they had owned a white Cadillac between September 1988 and March or April 1989. He argues that the two pieces of evidence show that he and Melina had seen each other near the time of the fire. Second, Heather Westergaard testified about threats made by Melina during a telephone conversation in April 1994. After she inquired about his connection to a man named John, Melina "told me if I didn't butt out of his business and stop asking questions, he was going to come and kick my fucking ass, and he called me a stupid bitch and a cunt. He was going to kick my ass and my boyfriend's ass." (T. 931). Finally, an agent from the Bureau of Alcohol, Tobacco and Firearms (ATF) testified that Melina told him that he had drawn a diagram found on the chalkboard, but denied that it was of Eddy's. Instead, Melina "said that the drawing on the board was of a bank in Mound, Minnesota" which "he and another individual had planned to rob." (T. 974).

Although Flaherty raised a <u>Bruton</u> objection to one of the statements at trial, he did not follow through to ensure the issue was preserved. When he objected to the admission of Melina's deposition statement, the government argued that that testimony contained only false exculpatory statements that did not directly implicate either party. The district court agreed and overruled the <u>Bruton</u> objection, but then asked the parties to confer about the proffered evidence. Flaherty agreed to the use of the statements now challenged, (Tr. 900-01), and did not object at the time they were introduced. (Tr. 918-20). When the evidence was brought in, the jury was instructed that "the testimony . . . with respect to Mr. Melina's testimony is admissible only as to him or against him and is not to be used with respect to any charges

5

against Mr. Flaherty."[2]   Flaherty did not raise any <u>Bruton</u> objection to the statements described in the testimony of Westergaard and the ATF agent, but he did object to the statements as hearsay.

At the close of all the evidence, the district court dismissed the conspiracy charge on the basis of insufficient evidence.  At that time, Flaherty was given an opportunity to raise any <u>Bruton</u> concerns, but chose not to do so.  His counsel stated that he did not believe any admitted evidence required a mistrial and that he believed an instruction directing the jury to consider Melina's statements only as to himself would be sufficient.[3]  Although some evidence had been admitted pending proof of a conspiracy, that evidence involved statements made by Flaherty.   The three statements now objected to on <u>Bruton</u> grounds were made after the conclusion of the charged conspiracy and were admitted at trial with cautionary instructions, but they were not received conditionally.   Flaherty did not mention any <u>Bruton</u> problem, and the court gave him the relief he requested.  He did not object to the content of the jury instructions given at the close of the

---

[2]Melina's lawyer requested that the instruction be given.  A deposition statement by Flaherty was admitted at the same time, and Melina's lawyer raised a <u>Bruton</u> objection related to it.  He requested that a limiting instruction be given about the depositions of both Flaherty and Melina.

[3]In response to the district court's inquiry about whether dismissal of the conspiracy count would lead to a request for a mistrial, Flaherty's lawyer replied:

> I think in this case because of the relative quanta of evidence that a mistrial is not appropriate, and that the problem can be remedied by sufficient cautionary instructions, which I believe is the first time I've ever said that in 23 years.  And we are not seeking a mistrial.  I've asked Mr. Flaherty if he is seeking a mistrial, and he does not want a mistrial either.

(Tr. at 1130).

trial.[4]  It thus appears from the record that Flaherty waived the right to pursue a <u>Bruton</u> objection on appeal.

Even assuming the issue was properly preserved for appeal, however, we are not persuaded that any <u>Bruton</u> violation occurred. A defendant's Sixth Amendment right of confrontation is violated when a nontestifying codefendant's confession incriminates the defendant and is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.  <u>Bruton</u>, 391 U.S. at 135-136.  <u>Bruton</u> does not, however, require the exclusion of all statements made by a codefendant.  If a codefendant's confession does not incriminate the defendant on its face, but does so only when linked to additional evidence, it may be admitted if a limiting instruction

---

[4]Prior to deliberating, the jury was instructed:

It is your duty to give separate and personal consideration to the case of each individual.  When you do so, you should analyze what the evidence in the case shows with respect to that individual defendant, leaving out of consideration any evidence admitted solely against the other defendant.

* * *

In certain circumstances evidence has been admitted only concerning a particular defendant or only for a particular purpose and not generally against both defendants or for all purposes.

For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose or against any other party not specifically mentioned.

In addition, statements made by a defendant out of the presence of the other defendant are to be considered by you only with regard to the defendant making the statement and are not to be considered by you with regard to the other defendant.

(Jury Instruction Tr. 102, 104-05).

7

is given to the jury and the defendant's name is redacted from the confession. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Bruton does not apply at all if the codefendant's statement does not incriminate the defendant. U.S. v. Escobar, 50 F.3d 1414, 1422 (8th Cir. 1995).

Here, the statements made by Melina do not incriminate Flaherty on their face, or even when linked to other evidence received at the trial. They do not refer to the charged crimes at all. Melina's deposition statements, even if linked to Mrs. Flaherty's testimony about when the couple owned the Cadillac, show only that Melina had seen Flaherty sometime near the time of the fire. Melina's threatening statements to Westergaard may suggest that he did not want to answer questions about his involvement with someone named "John," but did not implicate Flaherty in arson. Similarly, Melina's false statement to the ATF agent that the blackboard diagram was a bank he planned to rob, shows that Melina was willing to lie about the diagram, but does not implicate Flaherty. Melina's statements are evasive, false, and threatening, but not incriminating.

Moreover, any error in the admission of Melina's statements was harmless. See United States v. Jones, 965 F.2d 1507, 1515 (8th Cir.), cert. denied, 113 S. Ct. 346 (1992). If Melina's statements are not considered, the government's evidence, including evidence of Flaherty's motive, opportunity, connection to Melina, suspicious behavior, and false statements, is sufficient to support Flaherty's arson convictions.

Flaherty also argues that his case should not have been joined with Melina's and that the district court's denial of his motion to sever was an abuse of discretion. He claims he was prejudiced by the joinder because it allowed the jury to hear Melina's out-of-court statements. This is essentially the same as his Bruton argument, and we reject it for similar reasons. As explained

8

above, the statements that he complains of were not actually incriminating against him and were therefore not prejudicial to his case. See United States v. Rimell, 21 F.3d 281, 289 (8th Cir.), cert. denied, 115 S. Ct. 453 (1994) (defendant must show joinder resulted in "severe or compelling prejudice"). Moreover, Flaherty does not demonstrate that the jury was unable to compartmentalize the evidence as it related to the codefendants. See United States v. Agofsky, 20 F.3d 866, 871 (8th Cir.), cert. denied, 115 S. Ct. 280 (1994). The fact that the jury did not convict both defendants of both counts is evidence of its ability to analyze and distinguish the evidence as to each. In this case the limiting instructions were sufficient to cure any risk of prejudice. Zafiro v. United States, 506 U.S. 534, 113 S. Ct. 933, 937 (1993). The district court did not abuse its discretion.

Flaherty also argues that he was deprived of his rights to present a defense and to due process because the district court excluded evidence concerning the possible culpability of a third party. Flaherty claimed that T.E.H., a high school student who was a former Eddy's employee and a friend of Flaherty's son, Brady, had set a fire in Brady's school locker on October 7, 1988. T.E.H. was charged with arson in state court, but the charge was dismissed. During her testimony at trial, Mrs. Flaherty mentioned that someone had started a fire in Brady's locker in October 1988, but she did not attempt to identify the culprit.

Near the end of Flaherty's trial, his lawyer attempted to introduce a copy of the dismissed state court complaint to prove that T.E.H. set the locker fire. He hoped to create an inference that T.E.H. was responsible for the fires at Eddy's, and he indicated that he might be able to produce an eyewitness to the locker fire, but he was not sure. The government objected to the offer on the ground the evidence would be inadmissible under Federal Rules of Evidence 404(b) and 403, and the district court

sustained the objection.[5]

On appeal our task is not to substitute our judgment for that of the district court, but instead to determine whether its evidentiary ruling was an abuse of its discretion. King v. Ahrens, 16 F.3d 265, 270 (8th Cir. 1994). After a careful review of the record, we conclude that the district court did not abuse its discretion in this case. The probative value of the proffered evidence was slight. At the time of its ruling Flaherty's lawyer had made only a weak offer of proof; he had only a dismissed arson charge and was uncertain whether an eyewitness to the school fire could be located. He had no other evidence linking T.E.H. to the fires at Eddy's. Moreover, the fires were not started in a similar manner. The locker fire was simply lit with a match while the fire at Eddy's was of more sophisticated origin. We conclude that no reversible error occurred when the court sustained the government's Rule 403 objection.[6]

Flaherty next argues that the evidence was insufficient to prove the interstate commerce element of the offense of arson. 18 U.S.C. § 844(i) requires that the subject property was being used

---

[5]The district court stated that "[t]o the extent that there has been an offer to prove this, I am going to sustain the government's objection to it and not allow it . . .." (Tr. 1088-89). As the dissent points out, the court went on to elaborate on the admissibility of the evidence under Rule 404(b), but it is apparent from the context of the ruling that the court considered factors pertinent to both rules. The court's colloquy with counsel showed its concern over what proof Flaherty could actually offer about the locker incident to make it relevant, and the court commented that the manner in which the locker fire had been set was entirely different from the other fires. A district court is not required to make explicit findings regarding its Rule 403 balancing. King v. Ahrens, 16 F.3d 265, 269 (8th Cir. 1994).

[6]Because of this determination, it is not necessary to discuss Rule 404(b).

10

in interstate or foreign commerce. The parties agreed at trial that the jury should be instructed that "[t]he government may meet its burden of proving this element of the offense by demonstrating that the gas used to heat the building was supplied from outside the State of Minnesota," and they stipulated to the facts that Eddy's "was heated with . . . natural gas . . . purchased from sources outside of the State . . . of Minnesota." Flaherty did not object to the jury instruction or raise any issue regarding the government's proof of an interstate nexus in his motions for judgment of acquittal. He now asserts that the government was required to show a substantial connection between the building and interstate commerce, citing United States v. Lopez, 115 S. Ct. 1624 (1995).

Flaherty's failure to raise the interstate commerce issue in the district court resulted in a waiver of the issue, but the jury instruction given at trial mirrors the one upheld in United States v. Ryan, 41 F.3d 361 (8th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 1793 (1995). Flaherty stipulated to facts sufficient to meet the burden described in Ryan and is bound by that stipulation. Based on our review of the record we find no clear error. United States v. Jennings, 12 F.3d 836, 838 (8th Cir. 1994); United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc).

Even if the issue had not been waived, we are not persuaded that Lopez would apply. In that case the Supreme Court held that Congress had exceeded its authority under the Commerce Clause when it enacted the Gun-Free School Act, 18 U.S.C. §922(q)(1)(A), which made it a federal offense knowingly to possess a firearm in a school zone. That statute, by its terms, had "nothing to do with commerce or any sort of economic enterprise," nor did it contain a requirement that the possession be connected in any way to interstate commerce. Lopez, 115 S. Ct. at 1630-31. The arson statute at issue here, however, criminalizes the damage or destruction of business property and contains a jurisdictional

11

element requiring proof that the affected property is "used in interstate or foreign commerce."  The Lopez decision did not address the amount of evidence required to prove an explicit jurisdictional element of an offense and does not control this case.

Finally, Flaherty asserts that the evidence is insufficient to support the jury's verdict because it does not show that Flaherty started the fires or aided and abetted Melina.  We have reviewed the evidence submitted at trial and conclude that it is sufficient to support the verdict.

For the stated reasons the judgment of conviction is affirmed, and the motion for release pending appeal is dismissed as moot.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.  I think the district court abused its discretion in excluding evidence of the fire set by T.E.H.  The court today concludes that the district court excluded the evidence of the fire set by T.E.H. under Federal Rule of Evidence 403 because the probative value of the evidence was slight.  Although the government objected to the evidence based on Federal Rules of Evidence 404(b) and 403, the district court's ruling could not be more straightforward.  The district court excluded the evidence under Rule 404(b), not under 403.  The district court stated:

> I am going to sustain the Government's objection to it and not allow it, concluding that it is evidence of other crimes and its only purpose in being put forward, notwithstanding the representations of counsel, is to prove the character of the individual involved in order to show action and conformity therewith.  I don't think it fits any of the other exceptions of intent, preparation, plan, knowledge, et cetera, because I think the fires are entirely different. . . .

12

(T. at 1089).

In excluding the evidence under Rule 404(b), the district court applied Rule 404(b) too broadly. The court failed to recognize any difference between admitting similar acts evidence for offensive and defensive purposes. Specifically, the court ignored the fact that the defendant offered evidence of the similar acts of a third party. "[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword." United States v. Aboumoussallem, 726 F.2d 906, 911 (2d Cir. 1984); accord United States v. Cohen, 888 F.2d 770, 777 (11th Cir. 1989). Several courts have recognized this distinction, concluding that evidence of a third person's similar acts is not excluded under Rule 404(b) when the defendant is seeking to admit the evidence to prove some fact relevant to his defense. See, e.g., United States v. Blum, 62 F.3d 63, 67-68 (2d Cir. 1995) (court abused its discretion in excluding evidence of witness' personal motive to fabricate evidence); Cohen, 888 F.2d at 775-77 (court erred in excluding evidence that witness had been involved in similar scheme); Aboumoussallem, 726 F.2d at 912 (evidence that defendant's cousins duped another person into transporting hashish not inadmissible under Rule 404(b)). This result is justified because Rule 404(b) typically applies to exclude evidence that the prosecution seeks to introduce to show the accused committed a crime on another occasion. Fed. R. Evid. 404(b), advisory committee's note. The reason for excluding prior crimes evidence is the danger that the jury will use the evidence of a prior crime as a basis for inferring that the defendant committed the charged crime. United States v. DeAngelo, 13 F.3d 1228, 1232 (8th Cir.), cert. denied, 114 S. Ct. 2717 (1994). This justification is not implicated when, as here, the defendant offers the evidence to prove some fact relevant to his defense, namely, that someone else may have committed the crime. Flaherty attempted to use evidence of T.E.H.'s prior crime to support his defense theory. Thus, there

13

was no danger that the jury would make the improper inference contemplated by Rule 404(b).  See Huddleston v. United States, 485 U.S. 681 (1988) (discussing admission of similar act evidence).

The court must do a pas de chat to evade the district court's misapplication of Rule 404(b), saying that the T.E.H. evidence is of little probative value because Flaherty made a weak offer of proof.  The court states that Flaherty's only evidence of the school locker fire was a dismissed arson charge and a possible eyewitness to the fire.  The court also finds the evidence lacking because the fires were not similar.

Flaherty offered, however, a certified copy of the complaint charging T.E.W. with arson in the first degree arising out of the school locker fire as well as the Hennepin County attorney's file about the incident.  This file contains a police report, including witness' statements, a pretrial evaluation, and a case disposition summary.  These documents show that T.E.H.'s arson charge was dismissed in exchange for T.E.H.'s plea of guilty to the lesser included offense of burglary in the second degree.[7]  That the arson charge was ultimately dismissed has no factual or legal significance in this case.  See Dowling v. United States, 493 U.S. 342 (1990) (admitting testimony about an alleged crime that the defendant had been acquitted of committing); United States v. Riley, 684 F.2d 542, 546 (8th Cir. 1982), cert. denied, 459 U.S. 1111 (1983).  Moreover, that the restaurant fires were more sophisticated than the school locker fire does not bolster the court's ruling today.  Flaherty did not offer the evidence of the locker fire to prove T.E.H.'s character or that the fires were similar acts.  See Fed. R. Evid. 404(b).  Flaherty offered the

_____

[7]Of interest is the fact that T.E.H.'s pretrial evaluation and case disposition documents are dated December 26, 1988, and January 17, 1989.  The fires at the restaurant were set December 31, 1988, and January 12, 1989.

14

evidence to prove the possibility that another person set the fire. See United States v. Perkins, 937 F.2d 1397, 1400 (9th Cir. 1991) (defendant entitled to introduce evidence that someone else committed the crime); Blum, 62 F.3d at 68 (motive of third party to commit crime is recognized exception to Rule 404(b)). Besides the locker fire, there was other evidence supporting Flaherty's theory. There was evidence that T.E.H. was fired from his job at the restaurant and had a long-standing dispute with Flaherty's son, Brady. T.E.H. went to school with Brady, and had several physical and verbal confrontations with Brady. There was evidence that in addition to threatening Brady, T.E.H. had kicked Brady in the ribs.

As the district court did not base its ruling on Rule 403, it goes without saying that it did not perform the balancing test required by that rule. Although the court today rules the evidence of "slight" probative value, the court fails to balance the value of the evidence with the danger of unfair prejudice as required by Rule 403, if indeed an appellate court could perform this fact-finding function. There has been no articulation of "unfair prejudice." I do not see how the T.E.H. evidence "would influence the jury to decide the case on an improper basis." King v. Ahrens, 16 F.3d 265, 269 (8th Cir. 1994) (internal citation omitted). In my view, Flaherty should have been able to introduce this evidence to support his defense that someone else started the fire.

The exclusion of the T.E.H. evidence was prejudicial error. See Michigan v. Lucas, 111 S. Ct. 1743, 1747 (1991); United States v. Bear Stops, 997 F.2d 451, 454-57 (8th Cir. 1993). I would reverse and remand for a new trial.

A true copy.

15

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.