**UNITED STATES of America, Appellee,**

v.

**Michael TURNER, Appellant.**

**No. 91–3299.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1992.

Decided June 9, 1992.

S. Dean Price, Springfield, Mo., for appellant.

William G. Crowe, Springfield, Mo., for appellee.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN and HANSEN, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

Michael Turner appeals his conviction for attempting to escape from custody, in violation of 18 U.S.C. § 751(a). We affirm.

Beginning on June 23, 1989, Michael Turner lived in Room 115 in Ward 10–C of the United States Medical Center for Federal Prisoners in Springfield, Missouri. On August 7, 1990, correctional officers conducted a routine "shake-down" of cells in Turner's ward. When examining Turner's cell, the officers became suspicious when they noticed that he had a large stockpile of summer sausage and beef jerky. Upon closer inspection, an officer discovered that the window security screen in the cell had been cut out and was being held in place with steel wool. He also noticed that part

---

of the window pane was loose and was being held in place by wire and dental floss, and that one of the window's bars had been cut through halfway.

After noticing the damage to the cell's window, correctional officers removed Turner from the cell. The cell remained empty after Turner's removal. Six days later, officers discovered that several ceramic tile blocks in the wall in Turner's cell had been removed and were being held in place by fake mortar. Behind the loosened blocks, officers found three pieces of flat metal and nine metal bars. In addition to these items, Turner had steel wool, some grayish powder (similar to Ajax cleaning powder), tennis shoes which had been dyed black, a map of the area, and strips of material saturated with the grayish powder (used to cut the window bar) in his cell.

On the same day officers conducted the "shake-down" of Turner's cell, they inspected a supply closet in Ward 10–C, Room 126. Under the shelves in the closet, officers found wax chips, a grayish powder, three pieces of metal, two pairs of pants with waist size thirty, two partial sewing kits, dental floss, maps of the area, a bottle containing black ink, and a hand-sewn backpack.

The next day, two Deputy United States Marshals came to speak with Turner about the condition of his cell and his apparent plans to escape. After being read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Turner declined to speak with the Marshals. As the Marshals got up to leave, however, Turner changed his mind and answered some of their questions. Although he stated that he did not want to tell them about any of the damage in his cell, he told them that the steel wool and the grayish powder were easily available in the Center. He also told them that he had access, as an orderly on Ward 10–D, to Room 126 on Ward 10–C, the supply closet. When asked why he tried to escape, Turner replied that he was doing fifty years and just couldn't take it anymore. He asked the Marshals what they would have done in his position.

After a two-day trial, a jury found Turner guilty of attempting to escape. Evidence introduced at trial included Turner's statements to the Marshals and all of the items found in the supply closet. The District Court[1] sentenced Turner to forty-one months' imprisonment, consecutive to all pending sentences, to be followed by three years' supervised release. The Court also imposed a special assessment of $50. This appeal followed.

Turner raises two arguments on appeal. His first argument is that the District Court erred in admitting into evidence the items found in the supply closet. He claims that the items were never shown to be directly related to him or the crime with which he was charged, making them irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. Since the items were not directly linked to him, he also argues that the prejudicial impact of the items outweighed their probative value. Thus, he claims, the items should have been excluded under Rule 403. Finding no abuse of discretion, we affirm.

■ We agree with Turner that the items found in the supply closet were only circumstantially linked to his escape attempt. A circumstantial link, however, can be enough to make the items admissible. Although Turner was an orderly on Ward 10–D, not Ward 10–C where the supply closet was located, he admitted to the Marshals that he had access to the closet. In the past year, prison records showed that Turner had bought three sewing kits, none of which was recovered from his cell. Two kits were found in room 126. Officials discovered two pairs of pants, waist size 30, in the closet. Thirty is Turner's waist size. One of the orderlies actually assigned to Ward 10–C, with approved access to the closet, had a waist size of 42 or 44. (Neither the government nor the defendant presented evidence about the other orderly's waist size.) The officers found a bottle of black ink in the closet—tennis shoes dyed black were found in Turner's cell. Similarly, maps, dental floss, grayish powder, and metal tools were found in both

**1.** The Hon. Dean Whipple, United States District Judge for the Western District of Missouri.

Turner's cell and the supply closet. Clearly, the items helped the jury to decide whether Turner took substantial steps to escape.

█ Turner's second claim is that the District Court erred by overruling his objections after counsel for the government and two of its witnesses—the Marshals who interviewed him—stated that he asserted his right to remain silent after being given a *Miranda* warning.[2] We agree. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that allowing a prosecutor to cross-examine a defendant about his post-arrest silence after receiving a *Miranda* warning was a due-process violation. The Court noted that while *"Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Id.* 426 U.S. at 618, 96 S.Ct. at 2245. Consequently, it held that allowing the State to use the defendant's silence to impeach his testimony offered for the first time at trial would unfairly penalize him for exercising his *Miranda* rights.

If the government cannot refer to a defendant's post-arrest silence in its cross-examination of the defendant, surely it cannot elicit this same information in its case in chief. See *United States v. Szymaniak*, 934 F.2d 434, 439 (2nd Cir.1991). In both instances, the jury is likely to infer guilt from the defendant's silence. Thus, it was error for the District Court to allow the government to refer to Turner's silence after receiving a *Miranda* warning.

It is true, as the government emphasizes, that Turner later decided to waive his right to remain silent and talked to the Marshals. Turner's later waiver of his *Miranda* rights, however, does not mean the government is free to mention and therefore penalize him for his earlier reliance on that right. As we have previously noted, "the Supreme Court has never applied the waiver doctrine to a *Doyle* violation." *Bass v. Nix*, 909 F.2d 297, 304 (8th Cir.1990) (footnote omitted). The impermissible inference of guilt that arises when the jury learns of the defendant's post-arrest silence, which troubled the Court in *Doyle*, remains even where the defendant later decides to talk to authorities.

█ Despite our conclusion that the District Court erred in overruling Turner's objections, we nevertheless determine that the error here was harmless. See *Bass*, 909 F.2d at 304 (applying harmless-error analysis to *Doyle* violations). Our review of the record convinces us beyond a reasonable doubt that evidence about Turner's post-arrest silence did not contribute to the jury's verdict. Upon inspecting Turner's cell, prison officials discovered that the window screen, one window pane, and several ceramic tile blocks were loose, and that attempts had been made to conceal that fact. Turner had been the sole occupant of the cell for over thirteen months. Items found in the supply closet, which were indirectly linked to Turner, would be helpful to an escape attempt. And finally, after being questioned by the Marshals, Turner

---

2. The government made three references to Turner's post–*Miranda* silence.

Government counsel mentioned Turner's reliance on the *Miranda* warning in his opening argument:

"The evidence will show that a day later two Deputy Marshals Abdallah and John Heitman went out to talk to Mr. Turner. The evidence will show that they advised him of his rights and said do you want to talk? He says no." Trial Transcript at 59. The District Court denied the defendant's request for a mistrial or curative instruction.

The second reference occurred in the government's direct examination of Deputy Marshal Abdallah.

"Q. After advising Mr. Turner of his rights, did he indicate that he wanted to talk to you?

A. No. He indicated that he did not." Trial Transcript at 155. The District Court overruled the defendant's objection to this testimony.

The third reference to Turner's post-arrest silence occurred during the government's direct examination of Deputy Marshal Heitman.

"Q. Well, and so did you say do you want to talk to him?

A. He advised that he did not want to waive his rights and that he did not want to talk to—"

Trial Transcript at 170. The District Court again overruled the defendant's objection and his request for a mistrial at the close of the government's case.

asked them what they would have done in his position and told them that he just couldn't take it anymore. These statements, which Turner does not claim were improperly admitted, are tantamount to confessing his guilt.

We have ultimately concluded that the admission of evidence concerning Turner's reliance on *Miranda* warnings was harmless error. In view of the government's repeated efforts to inform the jury of this fact, however, a few additional comments are warranted. Lest there be any doubt, we emphatically reject the government's claim that mentioning a defendant's reliance on a constitutionally guaranteed right to remain silent is proper. The government's failure to understand this is a disservice to itself, the Court, and criminal defendants. We admonish the Assistant United States Attorney who argued this case both below and in this Court to reexamine the law upon which our decision is based. This issue is likely to arise again in his work. In this case the error in admitting the evidence was harmless beyond a reasonable doubt; in the next case it may not be.

The judgment of the District Court is affirmed.