**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George Henry MIHM, Defendant–Appellant.**

No. 93–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 10, 1993.

Decided Jan. 7, 1994.

Virginia G. Villa, Minneapolis, MN, argued (Robert D. Richman and Virginia G. Villa, on the brief), for defendant-appellant.

Nathan P. Petterson, Minneapolis, MN, argued (Francis X. Hermann and Nathan P. Petterson, on the brief), for plaintiff-appellee.

Before JOHN R. GIBSON, MAGILL, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

George Mihm appeals his conviction and 160–month sentence for conspiring with his brother Jerry to manufacture marijuana in rural southern Minnesota. Mihm was arrested while tending young marijuana plants on the roof of an abandoned school. The principal issue on appeal is whether the district

court[1] erred in admitting testimony regarding three other marijuana patches found in the vicinity of that school. We affirm.

## I. The Investigation and Arrest.

For some time prior to mid-July 1991, the Minnesota Bureau of Criminal Apprehension and the Fillmore County Sheriff's Department jointly investigated reports that the Mihm brothers were growing marijuana in Fillmore County. In the summer of 1990, a report that marijuana was growing on property owned by the Mihms' elderly aunt resulted in surveillance and discovery in September of approximately twenty harvested marijuana stalks in a clearing on that property. In late June 1991, officers returned to the aunt's property and found twelve to fifteen uncultivated marijuana plants growing near a run-down barn. On July 5, 1991, responding to reports of unusual activity at an abandoned school where the Mihms had formerly lived, officers found fifty marijuana plants growing approximately one-quarter of a mile north of the school.

On July 17, while continuing their search of the school area, officers discovered 1684 young marijuana plants growing in plastic pots on the roof of the abandoned school. Knowing that the plants required nearly constant watering, they staked out the premises. At 11:00 p.m. on July 18, George Mihm drove up to the school and climbed to the roof using an aluminum ladder left on the premises. Mihm was arrested as he descended from the roof. After receiving *Miranda* warnings, Mihm agreed to cooperate. When asked whether his brother Jerry was involved, Mihm replied, "you don't think I carried all that stuff up there by myself, do you?"

The officers then searched Mihm's car and, after obtaining a warrant, his residence. The car contained several items useful in growing marijuana—a sprayer, a bag of plant-potting mix, Miracle Grow plant food, insect spray, and pots identical to those on the school roof. Mihm's residence yielded similar items, plus a halogen indoor "grow"

light and a note reading, "Collected for Jerry on $10,000," and "$1,660 (Chad)." Officers later identified "Chad" as Chad Pestorious, Jerry Mihm's brother-in-law.

At the local police station, a Deputy Sheriff recognized Mihm and remembered that he had been involved in a dispute with a neighbor who objected to Mihm cutting down trees on local property he owned. The officer promptly visited that property and found a patch of thirty-seven cultivated marijuana plants.

A grand jury charged George and Jerry Mihm with conspiracy to manufacture marijuana from June 1 to July 19, 1991. Prior to the brothers' joint trial, George Mihm checked out of his halfway house and fled. Jerry Mihm was tried separately and convicted. George Mihm was eventually arrested in Idaho. He was brought to trial under a superseding indictment that also charged him with violating 18 U.S.C. § 1346 by failing to appear at the first trial.

## II. The Trial Proceedings.

At trial, Mihm's defense was that he was in the wrong place at the wrong time—he once lived on the abandoned school property and decided to investigate the school roof when he saw the ladder lying suspiciously in the wrong place on the night of July 18. He discovered the marijuana, returned to the ground, and was arrested by police, who misunderstood the purpose of his late-night visit.

Prior to trial, Mihm moved to exclude two types of "prior bad acts" evidence that had been admitted at Jerry Mihm's previous trial—testimony by Chad Pestorious regarding marijuana purchases prior to the alleged 1991 conspiracy, and testimony regarding marijuana found on the aunt's property. The district court deferred ruling on this motion until trial. The court explained, "I want to hear what the background is," and told Mihm's attorney, "if you would please, make your particular objections at that time so

1. The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota.

that I can [rule] in the context of what else is happening."

At the first day of trial, Chad Pestorious testified that he had purchased marijuana from both George and Jerry Mihm in 1989 and 1990. Mihm's continuing objection to this testimony was overruled, and he does not challenge that ruling on appeal. Police officers then described, *without objection,* their investigative activities in June and July 1991—discovery of two marijuana patches near the aunt's barn and a quarter mile from the school premises; discovery of the extensive school roof operation; the subsequent surveillance and arrest of Mihm; and the post-arrest discovery of another patch at the site where Mihm had cut down trees. On cross examination, the officers admitted that the fifteen plants on the aunt's property appeared to be growing wild, that they did not know who had trampled down a path leading to those plants, and that the fifty plants located a quarter mile from the abandoned school might have been growing wild and were on property owned by a person residing in Texas who had no known connection to George Mihm.

Though Chad Pestorious's prior acts testimony regarding marijuana purchases in 1989 and 1990 had been admitted, the district court advised counsel at the end of the first day of trial that it would give the jury a cautionary instruction the next morning under Fed.R.Evid. 404(b).[2] The following colloquy then occurred:

 THE COURT: Is there anything else, Mr. Richman [counsel for Mihm], that you feel I ought to incorporate into that caution?

 MR. RICHMAN: ... There was testimony concerning the plants at [the aunt's property]. I wouldn't ask that that be incorporated.

 THE COURT: That is such a minor part of what the government is doing in this case, at least so far. Until we hear some more about it, I hardly think it is worth mentioning.

The next morning, at the start of the second day of trial, the court cautioned the jury that Pestorious's testimony "should not be used to prove the charges of the indictment," but only to prove Mihm's intent, knowledge, motive, or lack of mistake or accident.

During the second day of trial, Officer Darrel Jenson testified that he discovered twenty harvested marijuana stalks at the aunt's property in September 1990. Mihm objected to this testimony, citing Rule 404(b); the district court overruled the objection but again gave a cautionary instruction regarding this evidence. Officer Jenson admitted on cross-examination that he did not know who had harvested the marijuana, and that he never saw a vehicle associated with George Mihm at the aunt's property.

The jury convicted Mihm of conspiring to manufacture marijuana, aiding and abetting the manufacture of marijuana, and failing to appear for trial. The district court imposed a sentence of 136 months in prison on the drug counts plus twenty four consecutive months for failing to appear. This appeal followed.

### III. Admissibility Issues.

On appeal, Mihm contends that the district court erred in admitting not only testimony regarding the marijuana patch found on his aunt's property in September 1990—to which he objected at trial—but also testimony regarding the two patches found in June and early July 1991 near his aunt's barn and a quarter mile from the school, to which he did not object. Mihm argues that there was no evidence linking him to any of these patches and therefore the government was allowed to "pollute the record" with totally irrelevant but highly prejudicial evidence.

■ *A. The 1991 Patches.* The patches discovered in June and July 1991 contained marijuana growing within the time frame of the alleged conspiracy to manufacture. The admissibility of this evidence therefore turns on its relevance; it was not prior acts evidence under Rule 404(b). *See United States v. Aranda,* 963 F.2d 211, 213–14 (8th Cir.

---

**2.** Fed.R.Evid. 404(b) provides that evidence of other crimes or wrongs is not admissible to prove character but may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

1992). We conclude that Mihm failed to preserve the relevance issue, and there was no plain error.

■ Mihm alerted the district court to the relevance issue with a motion in limine before trial.[3] The court deferred its ruling and requested that specific objections be made at trial. Nevertheless, Mihm did not object to this testimony at trial, even though the above-quoted colloquy at the end of the first day of trial demonstrates that he was well aware it had been offered. Instead, Mihm's counsel cross-examined the testifying officers to establish that they could not link him to these other patches.

■ Mihm argues that the district court committed plain error, see Fed.R.Crim.P. 52(b), because the probative value of this testimony was substantially outweighed by the prejudice of allowing the government to pollute the record with evidence of marijuana that it did not link to Mihm. We disagree for two reasons. First, we conclude that the district court cannot be guilty of plain error because it specifically advised Mihm when to raise this issue (by an objection at trial). Knowing that Mihm was aware of the relevance issue and when to raise it, the district court properly left to Mihm the decision whether to object to this evidence at trial. Rather than object on relevance grounds when this testimony was offered, Mihm elected to emphasize its lack of relevance during cross examination of the testifying officers. That tactical decision waived any relevance objection. See United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992), recognizing that an "unsuccessful tactical decision" at trial waives even plain error review of an evidentiary issue on appeal.

■ Second, even if the district court had not addressed the problem by telling Mihm when he should object, we would not find plain error. It is true that the government offered very little proof linking these two

patches to the Mihm brothers or to the school-roof grow operation. On the other hand, evidence regarding the 1991 patches was arguably admissible (at least with cautionary instructions) to explain the context of the investigation leading to discovery of the school-roof operation. See United States v. Williams, 971 F.2d 157 (8th Cir.1992). Thus, the principal argument for excluding this testimony is that its probative value was substantially outweighed by its potential for prejudice. See Fed.R.Evid. 403; United States v. Flynn, 852 F.2d 1045, 1054 (8th Cir.), cert. denied, 488 U.S. 974, 109 S.Ct. 511, 102 L.Ed.2d 546 (1988); United States v. Bass, 794 F.2d 1305, 1312 (8th Cir.), cert. denied, 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). Mihm argues that this evidence, though irrelevant, prejudicially undermined the credibility of his "wrong place at the wrong time" defense. On the other hand, little prejudice is likely from the admission of evidence that the government fails to link to the defendant. See United States v. Hawkins, 969 F.2d 169, 174 (6th Cir.1992), cert. denied, — U.S. —, 113 S.Ct. 1021, 122 L.Ed.2d 168 (1993). With the arguments for admissibility so nicely balanced, any error was not "plain," that is, "clear under current law." United States v. Olano, — U.S. —, —, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

■ *B. The 1990 Patch.* Mihm did object to testimony regarding the harvested marijuana patch found on his aunt's property in September 1990. This occurred prior to the alleged conspiracy and therefore was prior act evidence. Such evidence is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." United States v. Jones, 990 F.2d 1047, 1050 (8th Cir.1993). The district court has broad discretion in deciding whether to admit prior act evidence.

---

**3.** A motion in limine does not preserve error for appeal unless an objection is also made at trial. *United States v. Krapp*, 815 F.2d 1183, 1188 (8th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 174, 98 L.Ed.2d 127 (1987). Because the district court

had expressly reserved its ruling, Mihm cannot argue that an objection at trial would have been futile. *Compare Osborne v. Ohio*, 495 U.S. 103, 124–25, 110 S.Ct. 1691, 1704–05, 109 L.Ed.2d 98 (1990).

The government's theory for admitting this testimony was sound—evidence that Mihm was involved in growing marijuana in 1990 was relevant to the knowledge and intent issues raised by his "wrong place at the wrong time" defense. The problem in this case is that the government offered little if any evidence linking Mihm to the marijuana that had been harvested on his aunt's property in 1990. Proof connecting the defendant to the prior act is required for admission under Rule 404(b). *See Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) ("the Government may [not] parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo"). *Compare Jones,* 990 F.2d at 1050 (sufficient evidence connecting defendant to a prior drug transaction), *with United States v. Horvath,* 731 F.2d 557, 560 (8th Cir.1984) (prior act evidence erroneously admitted because it "had little probative weight and did not connect any of the [defendants] to the . . . incident").

In these circumstances, when testimony regarding the September 1990 patch was initially offered and objected to, we think the district court would have been better advised to conditionally receive this evidence subject to the government providing sufficient linkage to Mihm. *See* Fed.R.Evid. 104(b); *Huddleston,* 485 U.S. at 689–91, 108 S.Ct. at 1501–02. The government would then have known of the need to provide additional linkage, and Mihm would have been alerted to the need to move to strike the evidence for lack of linkage at the conclusion of the government's case-in-chief.

Whether the district court abused its discretion in failing to make such a conditional ruling is a close question. However, it is a question we need not decide because we conclude that admitting evidence of the September 1990 harvested patch was harmless error. During cross examination of Officer Jenson, Mihm effectively demonstrated the lack of any evidence linking him to his aunt's property and this marijuana patch. This virtually eliminated any prejudice. Moreover, the other evidence of Mihm's guilt was overwhelming. He was caught "red handed" on the school roof, and his "wrong place at the wrong time" defense was thoroughly discredited by other evidence—the marijuana found growing where he had cut down trees; the articles useful in manufacturing marijuana and the "drug note" found in his car and home; Chad Pestorious's testimony regarding prior marijuana sales; and Mihm's incriminating statements when arrested.

In these circumstances, we conclude that introduction of evidence concerning the harvested 1990 patch did not have "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993), quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). Therefore, any error was harmless. *See United States v. Nichols,* 808 F.2d 660, 663–64 (8th Cir.), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987); *Horvath,* 731 F.2d at 560–61.

## IV. A Sentencing Issue.

Because his brother Jerry received a 121–month sentence for identical conduct, Mihm argues that his 160–month sentence is inconsistent with the Guidelines' objective of imposing similar sentences on similarly situated offenders. The brothers' conduct was not identical, for Mihm was also convicted of failing to appear at the first trial, and 18 U.S.C. § 3146(b)(2) required that the district court impose a consecutive sentence for that conviction. Mihm concedes that the district court correctly applied this statute and the relevant Guidelines provisions in determining that his sentencing range was 151–188 months in prison. Because the district court then imposed a sentence within that range, we have no jurisdiction to review Mihm's sentence. *See* 18 U.S.C. § 3742(a); *United States v. Woodrum,* 959 F.2d 100, 101 (8th Cir.1992); *see also United States v. Jackson,* 959 F.2d 81, 83 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992) (no resentencing "for mere variations in sentences among similarly situated defendants").

We have carefully considered the other arguments Mihm makes on appeal and conclude they are without merit. The judgment of the district court is affirmed.