UNITED STATES of America, Appellee,

v.

**Newman Lee WILEY, Appellant.**

No. 93–3991.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1994.

Decided July 5, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 12, 1994.

---

John Charles Brink, Minneapolis, MN, for appellant.

Denise Ducharme Reilly, Minneapolis, MN (David L. Lillehaug and Denise D. Reilly, on brief), for appellee.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minne-

Before MAGILL, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

MAGILL, Circuit Judge.

Newman Lee Wiley appeals his conviction and the sentence imposed by the district court[1] for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1988), and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Supp. IV 1992). Wiley argues that (1) the government's comments on his post-*Miranda* silence require reversal, (2) the district court improperly admitted prior bad acts evidence, (3) the prosecutor committed reversible misconduct in her closing argument, and (4) his sentence is invalid because it does not conform to the offense charged in his indictment. We affirm.

## I. BACKGROUND

On March 25, 1993, Minneapolis Police Officers Delaney and Young stopped a rented car because the driver ran a stop sign. Before pulling over to the side of the road, the driver made suspicious movements that alerted the officers to the possible existence of a weapon in the car. Officer Delaney pat searched Wiley, the driver of the rental car, and discovered an empty gun holster. Officer Delaney arrested Wiley when he could not produce a driver's license. Officer Young searched Wiley incident to the arrest and discovered an electronic scale in the rear pocket of Wiley's pants and $764 cash and a pager in his front pants pocket. Officer Young proceeded to look inside the rental car and immediately spotted what he believed to be a bag of cocaine base sitting between the front two bucket seats. Officer Young had photographs of the cocaine base taken before he removed it from the car. Officer Young and Officer Perry then continued the search of the car and discovered a loaded .22 caliber handgun behind a clock on the dashboard.

On March 26, 1993, Agent George Gillett of the Bureau of Alcohol, Tobacco and Firearms

sota.

(ATF) interviewed Wiley. After Agent Gillett advised Wiley of his *Miranda* rights, Wiley stated that he did not want to discuss the March 25, 1993 arrest. Agent Gillett informed Wiley that the charges he faced carried sentences of ten years for the cocaine base and five additional years for the possession of the firearm. Wiley responded, "Damn, I just got that gun, too." On May 5, 1993, Wiley explained the events surrounding his March 25, 1993 arrest to ATF Agents McClelland and Kaminski.

At trial, Wiley testified that shortly before March 25, 1993, he had moved in with his uncle after having argued with his girlfriend Teddie Martin. On March 25, Wiley returned to Martin's house and discovered that someone had borrowed their rental car. Wiley stormed out and tried to find the car. He began walking and ran into Kevin Boddy, a.k.a. Smurf, who drove Wiley around until they spotted the rental car. Wiley testified that the driver of the rental car became aware that he was being followed, and in response the driver stopped the rental car and ran into or behind a house. Wiley got out of Smurf's car, ran to the rental car, found the keys in the ignition, and began driving. A short time later, Officers Delaney and Young pulled him over and arrested him.

Wiley denied any knowledge of the drugs in the rental car, but admitted that he possessed the .22 caliber revolver and had concealed it behind a clock on the dashboard. Wiley also testified that he had seen the electronic scale in the rental car but the scale had never been in his pocket. On cross-examination, Wiley stated that the inconsistencies between his story and the story he told ATF Agents McClelland and Kaminski resulted from their rewording of his previous statements.

Teddie Martin, who testified on Wiley's behalf, stated that she and Wiley had lived together until shortly before Wiley's arrest. Martin testified that she had become romantically involved with Terry Dickerson and had allowed Dickerson to borrow the rental car. For rebuttal, the government called Terry Dickerson who testified that he had dated Martin in 1985, that he had last seen her in 1990, and that he had lived in Ohio

since 1991. The defense recalled Martin in surrebuttal, and Martin testified that she knew *the* Terry Dickerson who had just testified, but he was not *the* Terry Dickerson to whom she had loaned the rental car. Further, she testified that she had not seen the Terry Dickerson who had just testified since 1989. On further cross-examination, Martin stated that she knew four Terrys and had dated three of them.

Officers Delaney and Young testified about the March 25, 1993 arrest, their discovery and seizure of the cocaine base, and their search and discovery of the loaded .22 caliber handgun. Agent Gillett testified, without objection, that he had advised Wiley of his *Miranda* rights and that Wiley had declined to speak about the events surrounding the March 25, 1993 arrest. The government also presented evidence that in August 1991, the Minneapolis police had stopped and arrested Wiley because he had been driving with a suspended license. Incident to that August 1991 arrest, the officers searched Wiley and found a pager, $227 cash, and baggies containing cocaine base. Dawn Speiler, the Minneapolis city chemist, tested the substance recovered during the August 1991 arrest and determined that it was cocaine base. Speiler also tested the substance recovered during the March 25, 1993 arrest and again determined that it was cocaine base.

During closing arguments, the government twice made reference, once over Wiley's objection, to Wiley's refusal to speak with Officer Gillett about his version of the March 25, 1993 arrest. The jury returned a guilty verdict. At sentencing, the district court rejected Wiley's argument that the court should sentence him for possession with intent to distribute cocaine rather than cocaine base. The district court sentenced Wiley to a total term of 195 months' imprisonment. Wiley timely appealed.

## II. DISCUSSION

Wiley argues that (1) the references to his post-*Miranda* silence require reversal, (2) the district court improperly admitted evidence of the August 1991 arrest, (3) the prosecutor made improper and prejudicial

statements in her closing argument, and (4) the district court improperly sentenced him for possession with intent to distribute *cocaine base* when his indictment referred only to *cocaine*. We analyze these claims in turn.

## A. *Doyle* Violations

■ The government concedes that it improperly made reference to Wiley's post-*Miranda* silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[2] Because Wiley failed to object to the first two *Doyle* violations, we review those violations for plain error. Because Wiley objected to the final *Doyle* violation, we review that violation under the harmless error standard. Wiley contends that the *Doyle* violations require reversal. We disagree.

■ This court lacks authority to consider an error that an appellant has failed to raise in the district court "unless (1) the district court committed error, i.e., deviated from a legal rule, (2) the error is plain, i.e., clear under current law, and (3) the error affected [the appellant's] substantial rights." *United States v. Montanye*, 996 F.2d 190, 192 (8th Cir.1993) (en banc); *see also United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (outlining plain-error review). "When a forfeited error meets these limitations, we have discretionary authority to order correction." *Montanye*, 996 F.2d at 192. We exercise that remedial discretion when "error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

The government concedes error, and we have little trouble concluding that the first two *Doyle* violations were clear under cur-

rent law. *See United States v. Turner*, 966 F.2d 440, 442–43 (8th Cir.1992). We conclude, however, that Wiley has not established that the first two *Doyle* violations violated Wiley's substantial rights because, as we will discuss below, Wiley's defense was transparently frivolous and the government's evidence was overwhelming. *See Montanye*, 996 F.2d at 192. We turn to the final *Doyle* violation.

■ "The Eighth Circuit applies the harmless-beyond-a-reasonable-doubt standard to *Doyle* violations." *Bass v. Nix*, 909 F.2d 297, 304 (8th Cir.1990). Factors that inform this harmless-error inquiry are "[1] whether the government made repeated *Doyle* violations, [2] whether any curative effort was made by the trial court, [3] whether the defendant's exculpatory evidence is 'transparently frivolous,' and [4] whether the other evidence of the defendant's guilt is 'otherwise overwhelming.'" *Id.* at 305; *see also Turner*, 966 F.2d at 442–43 (holding that repeated *Doyle* violations harmless in light of overwhelming evidence of guilt); *Hobbs v. Lockhart*, 791 F.2d 125, 130 (8th Cir.1986) (holding *Doyle* violation harmless "in light of the overwhelming evidence of guilt"); *cf. United States v. Gant*, 17 F.3d 935, 944 (7th Cir.1994) ("[T]he less believable the defense, … the more likely the conclusion that the constitutional error did not contribute to the conviction." (internal quotation omitted)).

■ We hold that the final *Doyle* violation was harmless beyond a reasonable doubt. We acknowledge that the prosecutor's statements clearly violated *Doyle* and the district court offered no curative instruction to deflect the potential injury to Wiley. Nevertheless, after reviewing the entire trial tran-

---

2. We have isolated three distinct *Doyle* violations. The first *Doyle* violation occurred during the direct examination of ATF Agent Gillett.

> [Prosecutor]: And what did he say after you advised him of his rights?
> [Gillett]: He told us that he understood his rights and was willing to talk with us.
> Q: Did he agree to talk about the events surrounding his arrest the day before?
> A: No, ma'am, he did not want to talk about those events.

I Trial Tr. at 107. The second violation occurred during closing argument.

The defendant's own words or lack of words the day after his arrest convict him. Do you remember [the] day after he's caught red-handed, Agent Gillett goes to talk to him. Wiley says: I don't want to talk about what happened on March 25th.

II *id.* at 277. Wiley objected to the third *Doyle* violation, which followed closely on the heels of the second.

Now, if it was an accident, like the defendant wants you to believe, why didn't he tell Agent Gillett the next day it was an accident? … Why didn't he say that then?

II *id.* at 277–78.

script, we conclude that the violation was harmless in light of Wiley's transparently frivolous defense and the overwhelming evidence of guilt.

Wiley's "wrong place at the wrong time" defense was transparently frivolous. Specifically, Wiley claimed that the cocaine base found in the car belonged to Dickerson, who had borrowed the car from Martin. Wiley's defense is fraught with incredible elements. First, Wiley testified that he began looking for the car on foot on a March evening in Minnesota even though he had no idea of its location. Second, by chance, he and Smurf spotted the rental car on their way to Wiley's home. Third, the driver of the rental car became aware that another car was following him; in response, the driver suddenly pulled over, abandoned the car that he had borrowed from Martin, abandoned also the valuable cocaine base in the car, and left the car running with the keys in the ignition. On its own merits, Wiley's defense was transparently frivolous. *Cf. Gant,* 17 F.3d at 944.

Further, the government's evidence overwhelmingly established Wiley's guilt and further discredited Wiley's defense. The government established that Wiley had been driving the car and that there were 60.1 ounces of cocaine base in plain view between the front two bucket seats. The officers photographed the location of the cocaine base before removing it from the car. The government's chemist testified that the drugs recovered were cocaine base and weighed 60.1 grams. The officers also recovered an electronic scale in Wiley's pocket that tested positive for traces of cocaine dust. Further, Wiley admitted that he had tried to conceal his .22 caliber handgun behind a clock on the dashboard.

The government also elicited testimony from ATF Agent Kaminski about her May 5, 1993 interview with Wiley in which Wiley's statements differed substantially from his testimony at trial. Specifically, contrary to Wiley's testimony at trial, ATF Agent Kaminski testified that Wiley told her that (1) Smurf had dropped him off prior to locating the rental car; (2) Wiley then began walking around Minneapolis in search of the rental car by himself; and (3) Wiley found the

rental car abandoned and saw no sign of the driver. The government highlighted and emphasized these inconsistencies during closing argument.

In light of the government's overwhelming evidence and Wiley's transparently frivolous defense, we conclude that the *Doyle* violations do not require reversal. *See Turner,* 966 F.2d at 442–43; *Hobbs,* 791 F.2d at 130.

### B. Admission of August 1991 Arrest

Wiley argues that admission of the events surrounding his August 1991 arrest violated Federal Rule of Evidence 404(b) (Rule 404(b)). We disagree.

 Rule 404(b) is a rule of inclusion that precludes admission of evidence that is relevant solely to the defendant's character. *United States v. Jones,* 990 F.2d 1047, 1050 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 699, 126 L.Ed.2d 666 (1994). "The district court has broad discretion in deciding whether to admit evidence of other wrongful acts, and its decision will not be overturned without a clear showing that the requirements for admitting such evidence have not been met." *United States v. Campbell,* 937 F.2d 404, 406–07 (8th Cir.1991) (citations omitted). Evidence of prior bad acts is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged." *Jones,* 990 F.2d at 1050.

This court's decision in *United States v. Mihm* forecloses Wiley's argument. *See* 13 F.3d 1200, 1202 (8th Cir.1994). In *Mihm,* the police arrested Mihm as he descended from a roof on which 1684 marijuana plants were growing. *Id.* At trial, Mihm claimed that he was in the wrong place at the wrong time. *Id.* The government sought to introduce evidence that a harvested marijuana patch was discovered at Mihm's aunt's property one year earlier. *Id.* at 1204. This court stated that the government's theory for admitting this evidence under Rule 404(b) was sound: to refute the knowledge and intent issues raised by defendant's "wrong

place at the wrong time" defense. *Id.* at 1205.

■ Like Mihm, Wiley also has claimed that he was caught in the "wrong place at the wrong time." Admission of evidence regarding his August 1991 arrest, therefore, was relevant to disprove the knowledge and intent issues raised by Wiley's defense. *See id.; see also United States v. Dobynes,* 905 F.2d 1192 (8th Cir.) (holding that evidence of prior crimes relevant to knowledge and intent issues raised by defendants' "mere presence defense"), *cert. denied,* 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990); *cf. United States v. Jenkins,* 7 F.3d 803, 807 (8th Cir.1993) (holding that 404(b) evidence inadmissible to prove intent where intent not at issue). Applying our four-pronged test, we conclude that the district court did not abuse its broad discretion in admitting evidence of the August 1991 arrest. *See Jones,* 990 F.2d at 1050. Wiley's August 1991 possession of cocaine base was relevant to the knowledge and intent issues raised by his defense; the August 1991 arrest satisfied the preponderance of the evidence standard; the evidence was higher in probative value than in prejudicial effect; and the events of August 1991 are remarkably similar in kind and took place less than twenty months earlier than the charged offense. *See id.*

Thus, we conclude that the district court did not abuse its discretion when it admitted evidence of Wiley's August 1991 arrest. *See Mihm,* 13 F.3d at 1205.

### C. Prosecutorial Misconduct

During closing argument, the prosecutor referred to Wiley as a "criminal" and a "drug dealer." Further, the prosecutor described Wiley in the following manner:

It's his trade, it's what he does for a living. While you go about your business earning your daily bread by welding, or soldering, or servicing clients with development disabilities, or helping in the family business or putting together floral designs, Newman Lee Wiley goes about his business dealing drugs onto the streets of Minneapolis.

II Tr. at 273–74. Wiley contends that these remarks were improper and prejudiced his substantial rights.

■ "Trial courts are vested with broad discretion in controlling closing arguments[,] and we will reverse only on a showing of abuse of discretion." *United States v. Eldridge,* 984 F.2d 943, 946 (8th Cir.1993). To prove prosecutorial misconduct, an appellant must prove that (1) the prosecutor's remarks were improper, and (2) the remarks prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *United States v. Bussey,* 942 F.2d 1241, 1253 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1936, 118 L.Ed.2d 542 (1992). "'Reversal is in order only if the court determines that the jury verdict could reasonab[ly] have been affected by the argument.'" *Eldridge,* 984 F.2d at 947 (quoting *United States v. Splain,* 545 F.2d 1131, 1135 (8th Cir.1976)).

■ We conclude that the prosecutor's characterization of Wiley as a "criminal" and "drug dealer," although arguably improper, did not deprive Wiley of a fair trial. *See United States v. Schepp,* 746 F.2d 406, 411–12 (8th Cir.1984) (references to defendant as "criminal" and "hoodlum" were improper but did not deprive defendant of fair trial), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985); *cf. United States v. Kindle,* 925 F.2d 272, 278 (8th Cir.1991) (references to defendant as "hot papa" and "boss" were not improper when based on evidence adduced at trial); *United States v. Pungitore,* 910 F.2d 1084, 1127 (3d Cir.1990) (prosecutor's reference to appellant as "cold-blooded murderer" and other defendants as "mob killers" were fair comments on evidence adduced at trial), *cert. denied,* 500 U.S. 915, 111 S.Ct. 2009, 114 L.Ed.2d 98 (1991). However, the prosecutor's characterization of Wiley as a criminal and drug dealer resulted in little, if any, prejudice because the jury already was aware that Wiley was on trial for distribution of cocaine base. *See Schepp,* 746 F.2d at 411–12. Thus, the prosecutor's statements differed little from a statement that Wiley was guilty of the charged offenses.

■ Further, the prosecutor also improperly compared Wiley's "business" to the busi-

nesses of law-abiding citizens in the community. That comparison improperly sought to arouse the jury's passion and prejudice. *See United States v. Johnson,* 968 F.2d 768, 769 (8th Cir.1992). In light of the overwhelming evidence of guilt, however, we conclude that the prosecutor's statements reasonably could not have affected the jury's verdict and therefore, those statements did not deprive Wiley of a fair trial. *See Bussey,* 942 F.2d at 1253; *cf. Johnson,* 968 F.2d at 772 (reversing jury verdict based on prosecutorial misconduct where evidence of guilt was "far from overwhelming").

### D. District Court's Sentence

 Finally, Wiley argues that the district court improperly sentenced him for possession with intent to distribute cocaine base when his indictment referred only to cocaine. *Id.* at 17–18.[3]

Wiley's arguments on this issue each assume that the jury convicted him of possession with intent to distribute cocaine. Wiley ignores the fact that the jury returned a guilty verdict based on a jury instruction that required the jury to find that Wiley possessed with an intent to distribute cocaine base, not cocaine. Wiley failed to object to this jury instruction. Thus, his challenges to his sentence have merit only if his conviction for distribution of cocaine base is invalid.

In order to warrant reversal, a defendant must establish that a variance between the charge and evidence at trial affected his substantial rights and caused him actual prejudice. *United States v. Valentine,* 984 F.2d 906, 911 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993). Like the Fifth Circuit, we doubt that there is any variance in this case because "[c]ocaine base is merely an isomer of cocaine." *United States v. Pierce,* 893 F.2d 669, 676 (5th Cir.1990). Second, even if we assume a variance between cocaine and cocaine base, we conclude that variance was

plainly harmless. Wiley was on notice before trial that the government intended to present evidence of Wiley's possession of cocaine base, and therefore any variance did not affect his substantial rights or cause actual prejudice.

Thus, because Wiley's conviction was valid, we reject Wiley's challenge to his sentence.

### III. CONCLUSION

For these reasons, we affirm the jury's verdict and the district court's sentence.

---

**3.** Wiley's indictment stated:

On or about March 25, 1993, in the State and District of Minnesota, the defendant, NEWMAN LEE WILEY, did knowingly and intentionally possess with intent to distribute approximately 60.1 grams of a substance or mixture containing a detectable amount of cocaine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

Wiley's Br.Add. at 1.