60 F.3d 823
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Nancy Darlene KEENE, Plaintiff-Appellee,
v.
AIRCAP INDUSTRIES CORPORATION, Defendant-Appellant.
 No. 94-1305
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1995
Decided: July 5, 1995
 
 William Bradford Stallard, Penn, Stuart, Eskridge & Jones, Abingdon, VA, for Appellant.
 Jane Siobhan Glenn, Fishwick, Jones & Glenn, Roanoke, VA, for Appellee.
 Daniel H. Caldwell, Penn, Stuart, Eskridge & Jones, Abingdon, VA; David W. Herrington, Wegman, Hessler, Vanderburg & O'Toole, Cleveland, OH, for Appellant.
 Robert B. Altizer, Gillespie, Hart, Altizer & Whitesell, Tazewell, VA, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and LUTTIG and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Nancy Keene's right hand was severely injured in an accident on a riding lawn mower manufactured by Aircap Industries Corporation. She filed this diversity action against Aircap asserting various tort and contract claims under Virginia law. A jury rendered a verdict in her favor and awarded her $2,000,000 in compensatory damages. Aircap appeals. Finding no error, we affirm.
 
 I.
 
 2
 On May 3, 1990, Nancy Keene was operating her family's riding lawn mower. Wet grass accumulated on her right foot, which was resting on the mower's footrest. She pressed the clutch brake with her left foot. This stopped the mower but did not disengage the blades. Keene reached down with her right hand to brush the wet grass from her right foot, and her hand made contact with the nip and pinch point of the belt and pulley located 4 1/16 inches below and 2 1/4 inches inboard of the footrest. The nip point cut off her middle finger and mangled her index finger.
 
 
 3
 Keene was hospitalized immediately. Over the next couple of months she underwent surgery and received skin grafts. In July 1990, she underwent reconstructive surgery to remove a bone from her hand. In September 1990, doctors amputated her index finger to the first joint, leaving her right hand with only two fingers (and a thumb). Her medical expenses totalled slightly more than $50,000.
 
 
 4
 The accident has had a devastating effect on Keene's life. When the accident occurred, Keene was taking courses to become a licensed practical nurse (LPN). She received her LPN degree in April 1991 and became employed at a small local hospital. However, she has experienced difficulties performing her LPN duties and has had to put off her career goal of becoming a registered nurse (RN). According to the American Medical Association guidelines, she has experienced a 45 percent loss of function in her right hand, which translates to a 25 percent impairment of her whole body. She is in pain much of the time and is unable to do many of the things she did before the accident.
 
 
 5
 Keene filed this diversity action against Aircap in March 1992. Her complaint alleged that Aircap was grossly negligent, negligently designed and manufactured the mower, negligently failed to warn, breached express warranties, and breached the implied warranties of merchantability and fitness for a particular purpose. Aircap moved for summary judgment on all claims. The court granted the motion with respect to the express warranties and implied warranty of fitness for a particular purpose. The claims based on negligence and an implied warranty of merchantability went to a jury trial in December 1992.
 
 
 6
 At trial each side called an expert witness. The experts agreed that the applicable standard was this one from the American National Standards Institute (ANSI):
 
 14. Shields or Guards
 
 7
 14.1 Power drives. Nip and pinch points (related to exposed ... belts ... ) and outside faces of pulleys ... shall be guarded by location or otherwise guarded to prevent inadvertent contact by the operator during normal starting, mounting and operation of the machine....
 
 
 8
 Keene put on evidence to show that the nip point was a hazard that rendered the mower unreasonably dangerous because it was not adequately guarded and could inadvertently be contacted by the operator during normal operation of the mower.
 
 
 9
 At the close of the evidence the court dismissed the failure-to-warn claim, leaving the claims for (1) negligent design and (2) breach of an implied warranty of merchantability. The jury returned a general verdict for Keene and awarded her $2,000,000 in compensatory damages. Aircap filed a post-trial motion for judgment as a matter of law, for a new trial, or alternatively for remittitur. The district court denied the motion. Aircap now appeals.
 
 II.
 A.
 
 10
 Aircap first argues that the district court erred in not granting its post-trial motion for judgment as a matter of law. Aircap contends it was entitled to judgment as a matter of law on the following affirmative defenses: (1) an open and obvious danger, (2) assumption of the risk, (3) contributory negligence, and (4) misuse of the product.
 
 
 11
 As an intitial matter, we note that Aircap is in a tough position raising a challenge to the jury's verdict on liability. Aircap took the position at trial that Keene deliberately stuck her hand into the area of the belt and pulley to clear away grass that had accumulated there. It thus urged that Keene was not really reaching to wipe grass from her foot when she was made contact with the nip point, and that if she was, then she should win. So, for example, Aircap began its opening argument as follows:
 
 
 12
 May it please the Court, members of the jury, let me say at the outset in my opening here that if, when all the evidence is in, you have been persuaded that the plaintiff was merely reaching to brush grass from her shoe when this accident occurred, that you should give her a verdict. We agree with that, if that is what you believe after you have heard all the evidence.
 
 
 13
 I submit to you that you are not going to be persuaded that that is what happened. Our evidence is going to show that the plaintiff was not simply reaching to do that but that ... she intentionally took her hand and placed it into this area, under the footrest, on top of the mowing deck where this belt and pulley was located.
 
 
 14
 As far as we can determine, the reason that she did that is because some grass had accumulated in there and she reached under the footrest and up into this area, which she knew was dangerous, to brush this grass out and that is how she got her hand caught.
 
 
 15
 During its cross-examination of Keene, Aircap tried to get her to admit that she deliberately placed her hand into the area of the belt and pulley while attempting to clear grass from that area. And in its cross-examination of Keene's expert (Dr. Barrett), Aircap tried to establish that it would not have been within the normal operation of the mower had Keene deliberately placed her hand into the area of the belt and pulley. (Aircap asked Dr. Barrett to assume "that while she was on her riding lawn mower [she] went to clear the belt of grass and that in doing so she deliberately put her hand into that area where the belt and pulley is and that that is how she got her hand entangled in the nip point.") Aircap's affirmative case likewise attempted to establish that Keene intentionally stuck her hand into the area of the nip point. Then, in its closing argument, Aircap reiterated:
 
 
 16
 The first point I want you to know and I want Ms. Keene to know is that I'm not calling her a liar [with respect to her testimony that her hand inadvertently got caught when she reached down to wipe grass from her foot]....
 
 
 17
 Secondly, I did tell you yesterday that after all evidence is in if you're persuaded that this accident happened because she was brushing grass from her shoe that you should give her a verdict and I mean that.
 
 
 18
 A rational jury could have found, as this jury obviously did, that Keene made contact with the nip point when she reached down to wipe grass from her foot. Thus, in view of Aircap's trial argument, a rational jury could have rendered a verdict for Keene.
 
 
 19
 In any event, regardless of Aircap's trial strategy, reasonable minds could differ on whether the evidence established Aircap's affirmative defenses. Without discussing each of the affirmative defenses separately, we note that the jury had before it the following evidence. Keene's expert testified that the nip point was not adequately guarded. Keene testified that she did not deliberately stick her hand into area of the nip point, but rather inadvertently got her hand caught there while reaching down to wipe grass from her foot. Keene further testified that she did not know the nip point could have been reached by one sitting on the mower. In this connection Aircap's expert testified that he did not think that someone riding on the mower could make contact with the nip point during normal operation. He also conceded that he was able to touch the nip point while seated on the mower.
 
 
 20
 From these facts, among others established at trial, a reasonable jury could find that the nip point was not an open and obvious danger. And a reasonable jury could find that in reaching down to wipe grass from her foot, Keene did not act negligently, assume the risk or misuse the mower. We thus affirm the district court's denial of Aircap's motion for judgment as a matter of law.
 
 B.
 
 21
 Keene's medical expenses totalled slightly more than $50,000. There was some testimony to indicate that, because of her deformity, she might have a difficult time finding another job were she to leave the small hospital where she worked at the time of trial. But she did not lose any earnings between the accident and the trial, because she was enrolled in a nursing program at the time of the accident and was employed as an LPN at the time of trial. Thus, the jury's award of $2,000,000 in compensatory damages was based largely on pain and suffering. Aircap says the award was excessive and that the district court abused its discretion in refusing to set it aside.
 
 
 22
 In addition to the medical expenses, the jury had before it the following evidence on damages: Keene suffered through several surgical procedures; she had virtually no use of her right arm during her recovery; she experienced physical pain every day; she has a diminished sense of self-worth; she has suffered and likely will continue to suffer mental anguish as a result of having to live with a deformed hand (she testified, for example, that her children are embarrassed to be seen in public with her because of her deformed hand); she has had to postpone indefinitely her plans of becoming an RN; she lost the part of her right hand that is responsible for fine motor coordination; and her injury resulted in a 45 percent loss of function of her right extremity, which translates to a 25 percent impairment of her whole body. In short, Keene's injury has had, and likely will continue to have, a devastating impact on her life (she was only 35 years old at the time of trial).
 
 
 23
 The jury's award certainly was high. But our standard of review here is "extremely stringent," Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 165 (4th Cir.1988). Having reviewed the record as a whole, we cannot conclude that the district court abused its discretion in refusing to set aside the award. The award was not so "outrageous as to demand being set aside," id. (internal quotation marks omitted). We sense "nothing indicative of a runaway jury or one that lost its head," Grunenthal v. Long Island R.R. Co., 393 U.S. 160, 163 (1968).
 
 C.
 
 24
 Aircap next contends that the district court abused its discretion in failing to instruct the jury that Aircap could not be held liable if Keene's injuries resulted from a defect in the mower that did not exist when the mower left Aircap's hands.
 
 
 25
 When a mower leaves Aircap's manufacturing facility the mowing apparatus is suspended from the mower's frame by six hangers. About a month before trial Aircap's expert inspected Keene's mower. The inspection revealed that two of the hangers on her mower were bent and, as a result, the belt and pulley were closer to the right footrest than they were when the mower left Aircap's hands. Aircap requested a jury instruction that Keene could not recover if her injury resulted "not from a defect in the mower, but from ordinary wear and tear which can be expected in its use, or from abuse or faulty maintenance." The court did not give the instruction.
 
 
 26
 The court did not abuse its discretion. There was no evidence to show that the damage to the hangers occurred before Keene's accident. Aircap's inspection took place over 2 1/2 years after the accident, and Keene's husband testified that he used the mower between the accident and the trial. (As an aside, we note that Aircap's expert took the position that even with the bent hangers the nip point was adequately guarded.)
 
 D.
 
 27
 Aircap complains that the district court gave contradictory instructions on assumption of the risk. The court first suggested that assumption of the risk might work as a defense against only negligence. Later the court properly instructed that the assumption-of-the-risk defense could bar recovery on both the negligence and implied warranty claims. Aircap says these contradictory statements confused the jury and amounted to reversible error.
 
 
 28
 Aircap did not object to the court's erroneous statement and therefore has not preserved the issue for appeal. To be sure, the district court said to both parties, "any charge that you requested and the court did not give ... will be considered objected to by you." But the court made clear that it wanted to hear any other objections to the charge beyond its failure to give a requested instruction. Aircap is not really challenging here the district court's refusal to give its requested instruction on assumption of the risk. Rather, it is challenging a misstatement by the court in the course of its charge. Therefore, the issue was not preserved for appeal. And the court's casual misstatement, which occurred in the context of an instruction on the burden of proof, does not amount to plain error.
 
 E.
 
 29
 Aircap complains that the trial testimony of Keene's expert, Dr. Barrett, departed from his deposition testimony in two respects. First, Aircap says Dr. Barrett introduced at trial a more narrow standard for the adequacy of guarding nip points than the one he endorsed in his deposition. Second, at trial Dr. Barrett discussed parts manuals from two other lawn mower manufacturers and other documents that he did not rely on in his deposition. Aircap contends that Keene violated Federal Rule of Civil Procedure 26(e) by failing to supplement either Dr. Barrett's deposition testimony or her answers to Aircap's interrogatories.
 
 
 30
 Having read the record, we disagree that Dr. Barrett introduced a new standard at trial. He referred in his deposition to the applicable ANSI standard, supra. At trial he endorsed the very same ANSI standard. And contrary to Aircap's suggestion, he said several times at trial that a nip point can be guarded adequately by location (as opposed to a fixed guard).
 
 
 31
 As for the documents Dr. Barrett discussed at trial, most were offered for background or historical purposes and were not admitted into evidence. To the extent these background materials might have suggested a standard different than the ANSI standard, on cross-examination Dr. Barrett made clear that the ANSI standard specifically dealt with power mowers and should govern over any general standards suggested by the background materials. And Aircap should not have been surprised by these background materials: Dr. Barrett explained in his deposition that his opinion was based specifically on the ANSI standard and more generally on the "numerous books and references that discuss the dangers of in-running nip points," presumably the ones he referenced at trial.
 
 
 32
 As for the two parts manuals, they were admitted into evidence. These manuals suggested that it was practical for Aircap to put a fixed guard on its mower. When Aircap complained to the court that it received these documents the morning of trial, the court said Aircap could confer with its expert and "cross examine extensively on it." The district court did not abuse its discretion in admitting this relevant evidence and allowing Aircap to challenge it on cross-examination. Moreover, any error was harmless. At best the parts manuals (like the background documents noted above) established that a fixed guard was better than guarding by location. But they did not disturb Dr. Barrett's statement (and Aircap's defense) that a fixed guard was not necessary and that a nip point could be guarded adequately by location.
 
 F.
 
 33
 As noted above, the governing standard in this case was an ANSI standard on the guarding of nip points. Whether Aircap complied with the ANSI standard hinged on whether contact with the nip point could occur during normal operation of its mower. The district court limited Aircap's cross-examination of Dr. Barrett on whether it would be within the normal operation of the mower for someone deliberately to put his hand into the area of the belt and pulley. Aircap says this was reversible error. We cannot agree, for Aircap clearly got from Dr. Barrett the testimony it wanted. He testified at various times that "it is not normal operation of the machine to try to clear a moving belt while the belt is moving," that "I don't think that's normal operation," and that "I think it would be misuse to try to clear grass from a moving belt."
 
 G.
 
 34
 Keene's accident occurred in May 1990. In September 1992, Keene and her husband separated. Aircap moved in limine to exclude evidence of the separation. The court took it under advisement. It issued an order explaining that it "did not make a final ruling on the motion" because it thought "it would be necessary to hear evidence which developed during the course of the trial before making such a ruling." Both Keene and her husband mentioned in their respective testimonies that her injury played a role in their separation. Aircap argues that this evidence was irrelevant and inadmissible because, as a matter of law, any negligence or breach of warranty on its part could not have been the proximate cause of the separation.
 
 
 35
 Aircap did not object when either Keene or her husband testified about their separation. Although Aircap moved in limine to exclude the evidence, "[a] motion in limine without subsequent, contemporaneous objection at trial ... is ordinarily insufficient to preserve an evidentiary ruling for appeal." United States v. Reed, 977 F.2d 14, 17 (1st Cir.1992); see Clausen v. Sea-3, Inc., 21 F.3d 1181, 1190 (1st Cir.1994) (citing cases from various circuits which say a party whose motion in limine has been overruled must renew his motion when the evidence is introduced at trial). But see American Home Assurance Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 324 (3d Cir.1985). Certainly an objection at trial should be required where, as here, the district court does not make a definitive ruling on the motion in limine. See Green Constr. Co. v. Kansas Power & Light Co., 1 F.3d 1005, 1013 (10th Cir.1993). In such a case the party opposing the admission of evidence "cannot argue that an objection at trial would have been futile." United States v. Mihm, 13 F.3d 1200, 1204 n. 3 (8th Cir.1994). Aircap thus has failed to preserve this issue for appeal, and the admission of the brief testimonies on separation does not amount to plain error.
 
 H.
 
 36
 Aircap wanted to ask prospective jurors (1) whether they believed that a manufacturer is required to make a product that is absolutely safe, and (2) whether they could return a verdict for Aircap if it proved that Keene was responsible for her injuries. The court disallowed these questions because they related to legal issues in the case. Aircap says this was reversible error because the court hindered its use of challenges. But Aircap did not object to the court's refusal to allow these questions and therefore did not preserve the issue for appeal. Regardless, we agree with Keene that Aircap essentially wanted to ask whether the prospective jurors agreed with the law applicable to the case. A trial court has broad discretion with respect to the examination of prospective jurors, see Fed.R.Civ.P. 47(a), and it may preclude voir dire examination on questions of law involved in the case. See United States v. Brunty, 701 F.2d 1375, 1379 (11th Cir.), cert. denied, 464 U.S. 848 (1983); United States v. Wooten, 518 F.2d 943, 946 (3d Cir.), cert. denied, 423 U.S. 895 (1975). We note, too, that the district court informed the prospective jurors that they were bound to apply the law in arriving at their verdict, whether they agreed with the law or not. The court asked them whether they had any reason they could not follow the law as instructed by the court. (In response, one prospective juror actually indicated that he could not follow the law, and he was removed.) And, of course, the jurors took an oath to apply the law.
 
 III.
 
 37
 We affirm the district court's judgment.
 
 AFFIRMED