# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2814

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Dominic R. Jackson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 13, 2010
Filed: July 8, 2010

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Dominic Jackson guilty of possession of crack cocaine and marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), conspiracy to possess crack cocaine, powder cocaine, and marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of these drug crimes, in violation of 18 U.S.C. § 924. The

district court[1] sentenced Jackson to 300 months' imprisonment. Jackson appeals, challenging the sufficiency of the evidence. For the following reasons, we affirm.

## I.  BACKGROUND

During the last week of October 2005, a confidential police informant purchased crack cocaine from the occupants of a one-bedroom house in Little Rock, Arkansas. Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") determined that the house was leased to Elias Rhodes and Peter Robinson. After gathering more information, the ATF agents obtained a search warrant for the house.

At 7:30 a.m. on November 3, 2005, ATF agents arrived at the house to conduct surveillance before executing the search warrant. They noticed a red Chevrolet Caprice parked in the backyard of the house. The agents entered the house at 9:00 a.m. and found Jackson sleeping on a couch in the living room and Rhodes in the bathroom. The agents found a bag of marijuana underneath a cushion of the couch where Jackson had been sleeping and two loaded firearms hidden in a second, nearby couch. On an entertainment center, the agents discovered bags of crack cocaine, powder cocaine, and marijuana, two digital scales, a box of plastic sandwich bags, keys, and a yellow aerosol can. The aerosol can had a false bottom, which the agents unscrewed to reveal more bags of crack cocaine. The agents also found a large brick of marijuana in the corner of the living room. In the bedroom, the agents found another brick of marijuana, twenty-nine bags of marijuana, three bags of powder cocaine, two boxes holding more than $1,000 in cash, and an Arkansas Department of Health appointment reminder slip addressed to Jackson. All of the drugs that the

---

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

agents recovered from the house, except the large bricks of marijuana, were packaged in fold-top plastic sandwich bags, which were knotted at the end.

During the search, an ATF special agent read Jackson his *Miranda*[2] rights, and Jackson agreed to speak with the agent. Jackson claimed that he did not live at the house, but he admitted that he had been coming to the house every day for the last three weeks to smoke marijuana. Jackson told the agent that the red Chevrolet Caprice parked in the backyard was his and that there was marijuana in it. The agents matched a set of keys found on the entertainment center to Jackson's car, which they then searched. In the front seat of Jackson's car, the agents found two bags of marijuana. Under the passenger seat, they discovered a yellow aerosol can, similar to the one found on the entertainment center in the house. Like the can in the house, this can had a false bottom, which an agent unscrewed to reveal four bags of marijuana and two bags containing multiple rocks of crack cocaine. Like the drugs found in the house, the drugs in Jackson's car were packaged in fold-top plastic sandwich bags that were knotted at the end. In total, the agents seized seventy-one grams of crack cocaine, 227 grams of powder cocaine, and 4.234 kilograms of marijuana from the house and Jackson's car.

A federal grand jury returned an indictment charging Jackson with (1) possession of fifty grams or more of cocaine base with the intent to distribute; (2) conspiracy to possess fifty grams or more of cocaine base with the intent to distribute; (3) conspiracy to possess 200 grams of powder cocaine with the intent to distribute; (4) possession of less than five kilograms of marijuana with the intent to distribute; (5) conspiracy to possess less than five kilograms of marijuana with the intent to distribute, and (6) possession of a firearm in furtherance of the drug crimes. The case proceeded to trial before a jury.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

At the trial, Robinson testified that he did not live at the house but that he had co-signed the lease so that Rhodes would have a place to live. Robinson acknowledged that he knew Rhodes and Jackson and had been to the house many times. According to Robinson, Jackson began living at the house three or four weeks before the agents executed the search warrant. Robinson saw "a lot of traffic" going to the house, and he testified that people were visiting the house to buy drugs from Rhodes and Jackson. In fact, Robinson brought a friend to the house to buy marijuana. During his frequent visits to the house, Robinson said he had observed bags of marijuana and crack cocaine, digital scales, and one of the firearms found during the search.

ATF Special Agent David Oliver also testified at trial. Agent Oliver provided details about the confidential informant buy, the execution of the search warrant, and the seizure of the drugs and firearms. In particular, Agent Oliver stated that the crack cocaine and marijuana found in Jackson's car were packaged in the same manner as the drugs inside the house and that the drugs in Jackson's car constituted distributable amounts. Agent Oliver testified that bags of marijuana the size of those found in the yellow aerosol can in Jackson's car were often sold for $10 to $25 each and that individual rocks of crack cocaine the size of those in the can were commonly sold for $20 to $40.

Jackson moved for judgment of acquittal at the close of the Government's evidence, and the district court reserved ruling on the motion. The district court submitted the case to the jury, and the jury found Jackson guilty on all six counts. Jackson renewed his motion for judgment of acquittal. The district court denied the motion and sentenced Jackson to a total term of 300 months' imprisonment.

## II.    DISCUSSION

Jackson argues that the district court erred by denying his motion for judgment of acquittal because the evidence was insufficient for the jury to find that he possessed the drugs, conspired to possess the drugs, or possessed the firearms in furtherance of these crimes. We review de novo the district court's denial of a motion for judgment of acquittal. *United States v. Coleman*, 584 F.3d 1121, 1125 (8th Cir. 2009), *cert. denied*, 559 U.S. ---, 130 S. Ct. 1752 (2010). "In conducting this review, we consider the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences in the Government's favor." *Id.* "The jury is responsible for assessing the credibility of witnesses and resolving conflicts in testimony, and its conclusions on these issues are 'virtually unreviewable on appeal.'" *United States v. Thompson*, 560 F.3d 745, 748-49 (8th Cir.) (quoting *United States v. Morris*, 327 F.3d 760, 761 (8th Cir. 2003)), *cert. denied*, 558 U.S. ---, 130 S. Ct. 329 (2009). "[W]e will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Coleman*, 584 F.3d at 1125.

To convict Jackson of possession of crack cocaine and marijuana with the intent to distribute, the Government must prove beyond a reasonable doubt (1) that Jackson knowingly possessed the drugs and (2) that he intended to distribute the drugs. *See United States v. McClellon*, 578 F.3d 846, 854 (8th Cir. 2009), *cert. denied*, 558 U.S. ---, 130 S. Ct. 1106 (2010). In his brief, Jackson admits that he knew that crack cocaine and marijuana were in the house, but he contends that the Government did not prove that he had possession of the drugs.

It is well established that possession can be either exclusive or joint. *See United States v. Sanders*, 341 F.3d 809, 816 (8th Cir. 2003). It can also be either constructive or actual. *Id.* "[A]n individual has constructive possession of contraband if he has ownership, dominion or control over the contraband itself, or dominion over the

premises in which the contraband is concealed." *McClellon*, 578 F.3d at 854 (quoting *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002)).

The evidence, viewed in the light most favorable to the verdict, showed that Jackson lived in the house where the agents found large amounts of crack cocaine, powder cocaine, and marijuana. There was evidence that people were buying drugs from Jackson and Rhodes at the house. In the room where Jackson was sleeping, agents discovered large quantities of drugs, drug-packaging materials, two digital scales, and two firearms. The agents also found significant amounts of drugs and cash in the bedroom, along with an Arkansas Department of Health appointment reminder slip addressed to Jackson. Furthermore, Jackson's car was parked outside of the house on the day the agents executed the search warrant, and the agents found the key to Jackson's car in the living room. "[M]ere presence [in a house where contraband is located] is not sufficient to support a conviction for possession." *United States v. Boyd*, 180 F.3d 967, 979 (8th Cir. 1999) (quoting *United States v. Dunlap*, 28 F.3d 823, 826 (8th Cir. 1994)). However, there was evidence that Jackson lived at the house, dealt drugs there, and that his personal belongings were in the rooms where the agents found drugs and drugs paraphernalia. This was sufficient for a reasonable jury to conclude that Jackson had dominion or control over the drugs. *See Cruz*, 285 F.3d at 698-99, and cases cited therein.

Even if this evidence alone were not sufficient, a jury could reasonably conclude that Jackson had dominion and control over the marijuana and crack cocaine found inside his car. *See United States v. Walker*, 393 F.3d 842, 847 (8th Cir. 2005). The drugs in Jackson's car were packaged in the same manner as the drugs inside the house, and several of the bags of drugs in Jackson's car were hidden in a yellow aerosol can with a false bottom, similar to the one found inside the house. A jury could reasonably conclude that Jackson's residence at the house and possession of the marijuana and crack cocaine in his car showed his dominion or control over the similarly-packaged marijuana and crack cocaine inside the house. Drawing all

reasonable inferences in the Government's favor, we hold that a reasonable jury could conclude beyond a reasonable doubt that Jackson knowingly possessed the drugs. Jackson concedes that if the evidence was sufficient to prove that he possessed the drugs, it was also sufficient for a jury to conclude that he had the intent to distribute the drugs. Accordingly, we affirm Jackson's convictions for possession of crack cocaine and marijuana with the intent to distribute.

Jackson next argues that the evidence was insufficient to support his convictions for conspiracy to possess marijuana, crack cocaine, and powder cocaine with the intent to distribute. To convict Jackson, the Government must prove beyond a reasonable doubt (1) that two or more people reached an agreement to possess the drugs with the intent to distribute; (2) that Jackson voluntarily and intentionally joined the agreement; and (3) that at the time Jackson joined the agreement, he knew its essential purpose. *See Coleman*, 584 F.3d at 1125. The Government is not required to prove an express agreement. *United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007). Instead, it need only establish a tacit understanding between the alleged co-conspirators, which may be shown through circumstantial evidence. *Id.* Because conspiracies often entail secrecy, the agreement between co-conspirators must frequently be established through "inference[s] from the surrounding circumstances." *Id* (quoting *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997)). Nevertheless, the Government must "offer enough evidence to prove a defendant's connection to a conspiracy beyond a reasonable doubt." *United States v. Lopez*, 443 F.3d 1026, 1028 (8th Cir. 2006) (en banc).

In his brief, Jackson attacks each piece of evidence individually and argues that it alone is not sufficient to prove a conspiracy; however, we must consider the entirety of the evidence to determine if it was sufficient to uphold the convictions. *United States v. Roberson*, 439 F.3d 934, 941-42 (8th Cir. 2006). Jackson relies primarily on *United States v. Jensen*, 141 F.3d 830 (8th Cir. 1998) to support his argument. In *Jensen*, we concluded that "evidence of mere buyer/seller exchanges" was not

sufficient to prove a conspiracy. *Id.* at 834. Here the evidence establishes more than a buyer/seller relationship between Jackson and Rhodes. The evidence certainly was sufficient to show that Jackson knew that marijuana, crack cocaine, and powder cocaine were being distributed from the house where he had been living with Rhodes. As previously discussed, there was also evidence that people went to the house to buy drugs from Jackson and Rhodes. The presence of distributable amounts of drugs in Jackson's car that were packaged in the same manner and in a similar container as the drugs inside the house further shows that Jackson and Rhodes had an agreement to possess the drugs with the intent to distribute them. *See Roberson*, 439 F.3d at 942. Based on this evidence, a reasonable jury could find beyond a reasonable doubt that Rhodes and Jackson had an agreement to possess the drugs with the intent to distribute, that Jackson voluntarily and intentionally joined the agreement, and that he knew its essential purpose. Thus, we affirm Jackson's convictions for conspiracy to possess the drugs with the intent to distribute them.

Finally, in his brief, Jackson concedes that if we find that there was sufficient evidence that he possessed the drugs, we should also find that there was sufficient evidence that he possessed the firearms in furtherance of the underlying drug offenses. Jackson expressly states that "the only way this [c]ourt should address the [sufficiency of the evidence to support the possession of the firearms in furtherance of the drug offenses] is if it has found . . . insufficient evidence to support the verdict on [c]ounts one and four," the counts addressing possession of the drugs. Since we have already concluded that there was sufficient evidence to find that Jackson possessed the drugs, we need not address the possession of the firearms further.

## III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____