# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3229

_____

United States of America

*Plaintiff - Appellee*

v.

Manuel Maldonado Aguilar

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: May 11, 2015
Filed: July 2, 2015
[Unpublished]

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Manuel Maldonado Aguilar (Maldonado) was convicted by a jury of conspiracy to possess with intent to distribute at least five but less than fifty grams of

methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).[1] On appeal, Maldonado argues that the district court[2] erred in denying his motion for judgment of acquittal and in calculating the amount of methamphetamine attributable to him. We affirm.

The facts elicited at Maldonado's trial are presented in the light most favorable to the jury's verdict. See United States v. Castillo, 713 F.3d 407, 411 (8th Cir. 2013). In August 2011, Arkansas police conducted a traffic-violation stop of a Jeep being driven by Julio Rapan. Rapan consented to a search of the Jeep, and officers discovered approximately 4.6 kilograms of methamphetamine hidden in the vehicle's spare tire. Rapan agreed to cooperate in a controlled delivery of the methamphetamine. Rapan was fitted with a recording device and was told by his supplier in a recorded call to meet Oswaldo Larranaga Lizarraga (Larranaga) in a drug-store parking lot in Little Rock, where officers were positioned to observe the transaction. Rapan drove to the meeting place and parked the Jeep. Shortly thereafter, officers observed two Hispanic males, later identified as Maldonado and Larranaga, arrive in a Dodge and park next to Rapan. Officers ran the license plate of the Dodge and learned that it was registered to Maldonado at a residence on Mansfield Drive. Additional officers were dispatched to monitor the Mansfield Drive residence.

In the meantime, Larranaga exited the Dodge and entered the Jeep, while Maldonado remained behind the wheel of the Dodge. Rapan then complied with Larranaga's direction to drive the Jeep to a nearby restaurant, with Maldonado

[1]This was Maldonado's second jury trial on these charges. Maldonado appealed the guilty verdict in his first trial, and a panel of this court reversed his conviction and remanded for a new trial after concluding that Maldonado was prejudiced by an alternate juror's presence in the jury room during deliberations. See United States v. Aguilar, 752 F.3d 1148, 1149 (8th Cir. 2014).

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

following them in the Dodge. During this short drive, Rapan's recording device captured Larranaga explaining that he was going to "unload the [Jeep]" and instructing Rapan to wait at the restaurant for Larranaga to return with the Jeep. When the Jeep and the Dodge arrived at the restaurant parking lot, Rapan exited the Jeep and went into the restaurant, and Larranaga moved into the driver's seat of the Jeep and drove away from the restaurant. Maldonado followed in the Dodge.

The two vehicles traveled in tandem for several miles, until their paths diverged at a stop sign. Although both vehicles eventually arrived at the Mansfield Drive residence and parked in the driveway, the Jeep took a more direct route to the residence and arrived first, while the Dodge took a more circuitous route through the surrounding neighborhood before pulling into the driveway behind the Jeep. An officer explained at trial that by taking this indirect route to the Mansfield Drive residence, Maldonado engaged in a "heat run," the purpose of which was to try and detect whether he was being followed by law enforcement.

Shortly after Maldonado arrived at the Mansfield Drive residence, officers converged on the scene, entered the residence to secure it, and arrested Larranaga and Maldonado. Maldonado consented to a search of the residence, and officers recovered approximately $46,000 from a shoebox in the master bedroom closet; a loaded .22-caliber revolver from a master bedroom night stand; an electronic scale from a kitchen utility closet, later testing of which revealed the presence of methamphetamine; and several spare tires and tire-disassembly tools from the back yard. Maldonado disavowed ownership of the $46,000, telling officers that he was holding the money for a friend whose name he could not recall.

Maldonado moved for a judgment of acquittal at the close of the government's evidence and again at the close of all the evidence, arguing that the government had failed to prove that he had conspired with Rapan and Larranaga to possess with intent to distribute the methamphetamine recovered from the Jeep. The district court

overruled both motions, concluding that "the government has put on enough evidence for the case to go to the jury." After several hours of deliberation, the jury found Maldonado guilty of conspiracy to possess with intent to distribute at least five but less than fifty grams of methamphetamine. Based on the jury-found quantity of methamphetamine, Maldonado faced a statutory minimum sentence of five years and a statutory maximum sentence of forty years in prison under § 841(b)(1)(B). The Presentence Investigation Report (PSR), however, attributed to Maldonado the entire 4.6-kilogram quantity of methamphetamine recovered from the Jeep, leading to a base offense level of 38 under § 2D1.1 of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines), which, coupled with a Category I criminal history score, resulted in an advisory Guidelines sentencing range of 235 to 293 months' imprisonment. Neither party objected to the facts set forth in the PSR, and the district court "adopt[ed] the report as written." Maldonado argued for a departure or variance from the Guidelines range, asserting as relevant here that his role in the conspiracy was limited and that the entire 4.6-kilogram quantity of methamphetamine was not foreseeable to him. The district court rejected Maldonado's arguments and sentenced him to 235 months' imprisonment, the bottom of the advisory Guidelines sentencing range.

Maldonado first argues that the district court erred in denying his motions for judgment of acquittal because there was insufficient evidence on which a reasonable juror could find him guilty of conspiracy. We review *de novo* the denial of a motion for judgment of acquittal and will affirm if any rational jury could have found the evidence sufficient to prove the essential elements of the charged offense beyond a reasonable doubt. United States v. Aponte, 619 F.3d 799, 804 (8th Cir. 2010). We view the evidence in the light most favorable to the jury's verdict and accept all reasonable inferences that support the verdict. Id. To prove the conspiracy, the government was required to establish beyond a reasonable doubt that Maldonado reached an agreement with at least one other person to possess the methamphetamine with intent to distribute, that Maldonado voluntarily and intentionally entered into the

agreement, and that Maldonado knew the essential purpose of the agreement when he entered into it. United States v. Jackson, 610 F.3d 1038, 1044 (8th Cir. 2010). Conspiracy may be proved by either direct or circumstantial evidence, see id., and a defendant who played only a minor role may nevertheless be convicted "so long as the government proves beyond a reasonable doubt that he . . . was a member of the conspiracy," United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc).

The evidence set forth above was sufficient for a reasonable jury to conclude that Maldonado, Rapan, and Larranaga had a common purpose and plan to deliver the methamphetamine in the Jeep to Maldonado's residence and to "unload" the methamphetamine there for further distribution. Contrary to his assertions on appeal, Maldonado did more than simply provide Larranaga with a ride to pick up the Jeep at the drug store. Maldonado followed the Jeep from the drug-store parking lot to the restaurant, waited for Larranaga to take control of the Jeep, followed the Jeep for several miles after it left the restaurant, and engaged in a "heat run" before eventually parking behind the Jeep at his Mansfield Drive residence. Moreover, the spare tires and tire-disassembly tools, the electronic scales with methamphetamine residue, and the dubiously explained $46,000 in cash recovered from Maldonado's residence constitute further evidence from which a reasonable jury could conclude that Maldonado was a knowing participant in the conspiracy to possess and distribute the methamphetamine. Considering the evidence presented at Maldonado's trial in its entirety, see Jackson, 610 F.3d at 1044, and keeping in mind our "very strict" standard of review, United States v. Malloy, 614 F.3d 852, 861 (8th Cir. 2010) (citations omitted), we cannot say that no reasonable jury could have found Maldonado guilty of the charged offense beyond a reasonable doubt. The district court thus did not err in denying Maldonado's motions for judgment of acquittal.

Maldonado next argues that his sentence is "invalid" because the government presented no evidence and the district court made no finding that the conspiracy's 4.6 kilograms of methamphetamine were foreseeable to him. This argument is without

merit. A conspiracy defendant's drug-quantity objection requires the district court to determine whether the quantity attributed by the PSR was reasonably foreseeable to him. United States v. Montanye, 996 F.2d 190, 192 (8th Cir. 1993) (en banc). In the absence of such an objection, the district court is under no obligation to make foreseeability findings. Id. Similarly, "the Government's obligation to present evidence in support of a PSR's factual statements," including drug quantity, "only arises for the facts the defendant disputes." Id. at 193. As noted above, Maldonado did not object to the drug quantity attributed to him in the PSR, and the district court adopted the PSR—including the drug quantity attributed to Maldonado—in its entirety. We conclude that the district court did not err, plainly or otherwise, in sentencing Maldonado. See id. at 192 (noting that plain-error review applies when issues are not raised in district court); United States v. Douglas, 646 F.3d 1134, 1137 (8th Cir. 2011) (stating that a court may accept as true facts in PSR to which defendant did not object).

The judgment is affirmed.

_____